1

2   Marni Rubin Watkins, Esq.
    Nevada Bar No. 9674
3   FIDELITY NATIONAL LAW GROUP
    2450 St. Rose Parkway, Suite 150
4   Henderson, Nevada 89074
    Telephone: (702) 667-3000
5   Facsimile: (702) 697-2020
    Email: marni.watkins@fnf.com
6   Attorney for *Chicago Title Company, Inc.*

7

8                    **UNITED STATES DISTRICT COURT**

9                          **DISTRICT OF NEVADA**

10

11  PERFEKT MARKETING, LLC, an Arizona limited )   Case No.: 2:15-cv-00717-JCM-PAL
    liability company                          )
12                                             )
                              Plaintiff,       )
13            vs.                              )   **CHICAGO TITLE COMPANY**
                                               )   **INC.'S MOTION TO INTERPLEAD**
14  LUXURY VACATION DEALS, LLC, a Nevada       )   **FUNDS**
    limited liability company; HENRY INGIER, an )
15  individual; MICHAEL DIMAYO, an individual; )
    JOSHUA STORY, an individual,               )
16                                             )
                              Defendant (s).   )
17  _____)
                                               )
18  CHICAGO TITLE COMPANY, INC.                )
                                               )
19                     Plaintiff in intervention, )
                                               )
20  vs.                                        )
                                               )
21  PERFEKT MARKETING, LLC, an Arizona limited )
    liability company; LUXURY VACATION DEALS,  )
22  LLC, a Nevada limited liability company; TRAVEL )
    TO GO, a California corporation; STEVE     )
23  YARMAK, an individual; UNITED STATES       )
    DEPARTMENT OF TREASURY, INTERNAL           )
24  REVENUE SERVICE; WINDHAM                    )
    PROFESSIONALS, INC., A New Hampshire       )
25  collection agency; EMPLOYMENT              )
    DEVELOPMENT DEPARTMENT, STATE OF           )
26  CALIFORNIA; DOES I-V; and ROE Corporations )
    I-X;                                       )
27  _____)
                       Defendants in Intervention )
28

Fidelity National
Law Group
2450 St. Rose Pkwy., Ste. 150
Henderson, Nevada 89074
(702) 667-3000

                              Page 1 of 9

1    Plaintiff in intervention, CHICAGO TITLE COMPANY INC. ("Chicago Title"), by and

2    through its counsel of record, the Fidelity National Law Group, hereby moves this Honorable

3    Court for an order permitting Chicago Title to interplead and deposit the disputed escrow funds

4    with the Clerk of the Court and, upon such deposit, discharging and dismissing Chicago Title as a

5    defendant and or party. This motion is made and based upon FRCP 22 and NRS § 645A.177, the

6    following memorandum of points and authorities, the pleadings and papers on file herein, and any

7    oral argument the Court may allow.

8

9    DATED this 22 day of April, 2015.

10

                                            FIDELITY NATIONAL LAW GROUP

11

12

13    _____

14    MARNI WATKINS, ESQ.
      Nevada Bar No. 9674
15    2450 St. Rose Pkwy., Ste. 150
      Henderson, Nevada 89074
16    *Attorneys for*
      *Chicago Title Company, Inc.*

17

18

19

20    **MEMORANDUM OF POINTS AND AUTHORITIES**

21    **I.    STATEMENT OF FACTS**

22    Luxury Vacation Deals, LLC ("LVD") was to distribute and market and sell sub-license

23    agreements in participation in the Travel To Go travel club program ("Club") to qualified

24    individuals ("Purchasers") pursuant to purchase agreements executed between LVD and Purchasers

25    setting forth the terms and conditions for the purchases ("Purchase Agreements"). Each Purchase

26    Agreement constitutes a "Sale".

27    Chicago Title entered into an agreement with LVD whereby Chicago Title agreed allow

28    "LVD the use of Chicago Title's merchant credit-card account ("Merchant Account") for

Fidelity National
Law Group
2450 St. Rose Pkwy., Ste. 150
Henderson, Nevada 89074
(702) 667-3000

Page 2 of 9

1  processing, directly into Chicago Title's escrow trust account all of Purchasers' deposits for

2  payment of the purchase price for participating in the Club ("Purchase Price");" and Chicago Title,

3  in turn, would "act as the Escrow Agent under the Purchase Agreement for holding Purchaser

4  funds in its escrow trust account until such time as all of the instructions to the Escrow Agent have

5  been satisfied."  **Exhibit A,** Escrow Agreement And Related Escrow Instructions ("Escrow

6  Agreement").  On or about December 5, 2011, LVD and Chicago Title entered into an Escrow

7  Agreement setting forth the terms of the agreement and escrow instructions.

8       Section 1.3 of the Escrow Agreement, provides:

9
10       1.3 **In the event Chicago should receive, become aware of, or be a party of any**
         **conflicting demands, claims or disputes between LVD and Chicago, and/or**
         **LVD and a Purchaser,** with respect to the funds escrowed under this
11       Agreement or under the Purchase Agreements, or to the rights or benefits in the
         Program as to any Purchaser, or **to any money or property deposited in**
12       **escrow,** Chicago shall have the absolute right, at its absolute sole discretion and
         option, to discontinue any or all further acts as Escrow Agent under this
13       Agreement until such conflict is resolved to its satisfaction; provided however,
         in such event, and regardless of Chicago's decision to continue or discontinue
14       its acts as Escrow Agent hereunder, all parties instructions and agreements
         contained herein shall remain in full force and effect and shall not be terminated
15       or withdrawn unless and until Escrow Agent shall receive all Parties mutual,
16       written **instructions or an Order of a Court having competent jurisdiction**
         **over this Agreement, settling such conflict**.
17

18  **Exhibit A**. (Emphasis added).

19       Section 5 sets forth the agreement as to the Security Fund. Section 5.2 provides:

20
21       5.2 LVD hereby authorizes Chicago to make the following disbursements from
         its Security Fund account for the following events ("Approved Security Fund
22       Disbursements"):
              …
23            5.2(f)  LVD defaults or breaches any term or agreement under this
         Agreement, the Fulfillment and Distribution Agreement (defined below), or
24       under any other agreement pertaining to Sales of participation in the Clube
         by LVD, and LVD does not fully satisfy or cure such default or breach after
25       expiration of Ten (10) business days after notice thereof has been given to
         LVD, then Chicago may pay such funds as are required to cure such default
26       or breach….

27            …
28            5.2(h)  Any fees or costs, including reasonable attorney's fees, incurred by

Fidelity National
Law Group
2450 St. Rose Pkwy., Ste. 150
Henderson, Nevada 89074
(702) 667-3000

Page 3 of 9

Chicago in i) protecting the integrity of the Chicago escrow trust accounts and/or its Merchant Accounts; 2) to enforce the terms and conditions of this Agreement and/or an individual purchaser's Purchas Agreement; and 3) to enforce or defend any claim, dispute or action brought by or against Chicago as a result of LVD's action(s) or non-action(s) as it pertains to LVD's agreements, duties and/or responsibilities under this Agreement and/or an individual purchaser's Purchase Agreement;

5.3 Upon termination of this Agreement, Chicago shall unconditionally retain the Security Fund for the purposes for which it was intended as set forth above for i) one (1) year after the last closing of an escrow for a sale made by LVD hereunder; or ii) finalization of the last dispute/chargeback by a Purchaser having purchased from LVD hereunder, whichever date is the later. At the end of such applicable period, Chicago, using its reasonable business judgment, shall evaluate the risk that remains of any Purchaser(s) likely to make a dispute/chargeback against LVD and Chicago's Merchant Account, and Chicago shall determine, in its sole discretion, whether any Security Funds shall remain on deposit or be released to LVD and the terms and conditions for such continued hold. Prior to release of Security Fund(s) to LVD under this paragraph, LVD and the Club owner (as defined below) shall sign a General Release and Estoppel to Chicago certifying that LVD has no outstanding claims, disputes, issues or questions regarding disbursements made, or to be made, from the Security Fund. It is understood and agreed that Chicago shall not release the Security Fund(s) under this paragraph until claims, disputes, issues or questions between the parties has been resolved and both parties have signed the General Release and Estoppel.

Section 6 sets forth that Chicago Title may pay any collection agency from the Security Funds.

6.      FAILURE OF PURCHASER'S FORM OF PAYMENT: In the event a purchaser's original form of payment of the purchase price for a Program Membership should fail for any reason after the rescission period has expired, Chicago may, but is not obligated or required to, on behalf of LVD, send the Purchase Agreement to a collections agency to pursue payment of all monies due under the Purchase Agreement by another form of payment, as provided for under the terms of the Purchase Agreement. It is understood and agreed that any recovery of payment shall be first applied to all fees and costs of the collections agency and Chicago and the balance applied towards the debit against LVD's Security Fund for the failure of Purchaser's original form of payment. LVD agrees that the collections agency may use whatever legal means it deems necessary to obtain payment. LVD authorizes and instructs Chicago to execute, on its behalf, whatsoever documentation is required of the collections agency to pursue payment hereunder.

On December 3, 2014, Perfekt Marketing, LLC ("Perfekt Marketing"), obtained an Order directing Chicago Title to disburse the funds held in the Security Fund to Perfekt Marketing. *See*

Fidelity National
Law Group
2450 St. Rose Pkwy., Ste. 150
Henderson, Nevada 89074
(702) 667-3000

1   Exhibit A. The Order was entered on December 15, 2014.   It has previously been explained to

2   counsel for Perfekt Marketing that LVD and Chicago Title have received numerous conflicting

3   claims to the money held in the security fund by LVD's creditors.   Chicago Title requested that

4   Perfekt Marketing, the creditors and LVD work together to determine who is to receive what

5   monies from Chicago Title and then provide a mutual instruction. The following persons/entities

6   have made demands of LVD and/or Chicago Title and are therefore listed as Defendants in

7   Chicago Title's Complaint in intervention:

8       • Travel To Go – approximately $23,000.  *See* **Exhibit B.**

9       • IRS and the State of California – Approximately $28,329.35. *See* **Exhibit C.**

10       • Windham Professionals Collection Agency – Approximately $10,767.95. *See*

11        **Exhibit D.**

12       • Employment Development Department, State of California, approximately

13        $1008.04. *See* **Exhibit E.**

14   Counsel for Perfekt Marketing failed to negotiate an amicable solution with the LVD's creditors,

15   and instead obtained the Order attached hereto as Exhibit A directing Chicago Title to distribute

16   the funds to Plaintiff.

17        On November 20, 2014, Plaintiff served CT Corporation System, Los Angeles, CA with

18   Plaintiff's Motion for Order Directing Disbursement of Funds that was filed on October 16, 2014.

19   **Exhibit F, Service on CT of the Motion.** However, Chicago Title was never made a party to this

20   action and therefore has never had a chance to defend itself or assert its position with regards to

21   the Security Fund.  Because of this, Chicago Title filed a Motion to Intervene and file a Complaint

22   in interpleader and named Perfekt Marketing, LLC, Luxury Vacation Deals, LLC, Travel To Go,

23   Steve Yarmak, United States Department of Treasury, Internal Revenue Service, Windham

24   Professionals, Inc., and Employment Development Department, State of California in its

25   Complaint in Intervention and to Interplead Funds.

26        Chicago Title claims no interest in the escrow funds being held, with the exception of its

27   attorney's fees and costs; however Chicago Title cannot safely determine which party is entitled to

28   those funds.  That is, Chicago Title is not qualified to make a determination as to the priority of

Fidelity National
Law Group
2450 St. Rose Pkwy., Ste. 150
Henderson, Nevada 89074
(702) 667-3000

Page 5 of 9

1   the claims to the funds, and whether the party is entitled to the entire amount of the escrowed

2   funds or a portion thereof.

## II.   LEGAL ARGUMENT

### A.   Federal Rule of Civil Procedure 22 And NRS § 645A.177 Provides For An Interpleader

Chicago Title claims no interest in the funds being held in escrow, with the exception of its costs and attorney's fees, but Chicago Title is unable to determine to whom the funds should be paid.  Here, Chicago Title is the Plaintiff in intervention. FRCP 22, provides:

> (a) Grounds.
>    (1)    By a Plaintiff. Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead.  Joinder for interpleader is proper even though:
>        (A)    The claims of the several claimants, or the title on which their claims depend, lack a common origin or are adverse and independent rather than identical; or
>        (B)    The plaintiff denies liability in whole or in part to any or all of the claimants.
>    (2)    By a defendant. A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.

Similarly, NRS § 645A.177 provides:

> 1.    If an action is filed to recover money deposited in an escrow established for the sale of real property, the holder of the escrow may deposit the money, less any fees or charges owed to the holder of the escrow, with the court in which the action is filed.
>
> 2.    A holder of an escrow who complies with the provision of subsection 1 **is discharged from further responsibility for the money** which the holder of the escrow deposits with the court.
>
> 3.    This section does not limit the right of the holder of the escrow to bring an action for interpleader pursuant to NRCP 22 to determine the rightful claimant of the money deposited in the escrow.

"A 'stakeholder' is the person or entity who possesses a fund to which adverse claims are made, but who personally has no interest in the fund." *Island Title Corp. v. Bundy,* 488 F.Supp.2d 1084 (D. Hawaii 2007). "An interpleader action is designed to protect a stakeholder, as such,

Fidelity National
Law Group
2450 St. Rose Pkwy., Ste. 150
Henderson, Nevada 89074
(702) 667-3000

Page 6 of 9

from possibility of multiple claims upon a single fund" and "[t]o this end this rule is liberally construe to protect stakeholders from the expense of defending twice, as well as to protect him from double liability." *Matter of Bohart,* 743 F.2d 313, 324-325 (5th Cir. 1984). "A stakeholder's right to interplead is not necessarily defeated by the fact that an interpleaded claimant has an outstanding judgment against the stakeholder." *Id.*

The court has discretion to award attorney's fees and costs to the stakeholder when it is fair and equitable to do so. *Gelfgren v. Republic National Life Insurance Co. et al.,* 680 F.2d 79, 81 (9th Cir. 1982). The Court's discretion to award attorney's fees and costs is limited, however, if the award operates to diminish a distribution of the fund to satisfy a federal tax lien. Consistent with other jurisdictions, the Ninth Circuit held that federal "governmental priority established under the tax lien statutes precludes an award of fees to the plaintiff stakeholder from an interpleader fund when such an award would deplete the fund prior to total satisfaction of the lien." *Abex Corp. v. Ski's Enterprises, Inc., et al.,* 748 F.2d 513, 517 (9th Cir.1984); *see also Millers Mutual Insurance Assn. of Illinois v. Wassall,* 738 F.2d 302, 304 (8th Cir.1984); *Chevron U.S.A. v. May Oilfield Services, Inc.,* 739 F.2d 498, 499 (10th Cir.1984); *Katsaris v. United States,* 684 F.2d 758, 763 (11th Cir.1982); *Campagna–Turano Bakery, Inc. v. United States,* 632 F.2d 39, 42–43 (7th Cir.1980); *Spinks v. Jones,* 499 F.2d 339 (5th Cir.1974); *United States v. State National Bank of Connecticut,* 421 F.2d 519, 521 (2d Cir.1970); *United States v. Wilson,* 333 F.2d 147, 149 (3d Cir.1964); *United States v. Chapman,* 281 F.2d 862, 870 (10th Cir.1960). The tax lien statutes that establish the governmental priority are sections 6321 and 6322 of the Internal Revenue Code. Abex, 748 F.2d at 517.

The *Abex* rule does not necessarily bar a court from awarding attorney's fees and costs from the portion of the funds allotted to a superior claim. At least one court has found that the existence of a federal tax lien on a portion of the funds did not shield superior claimants from

Fidelity National
Law Group
2450 St. Rose Pkwy., Ste. 150
Henderson, Nevada 89074
(702) 667-3000

Page 7 of 9

1  being charged a pro rata share of the interpleader stakeholder's attorney's fees and costs. See

2  *United States v. Chapman, et al.,* 281 F.2d 862, 871 (10th Cir.1960).

3      Finally, on deposit of the disputed escrow funds into Court, Chicago Title should be

4  dismissed from this action since it has no interest in the outcome hereof and are not necessary to

5  afford complete relief to the parties hereto.  FRCP 12(b)(6).

6

7  **II.**   **CONCLUSION**

8      Based upon the foregoing, Chicago Title requests that the Motion to Interplead Funds and

9  dismiss Chicago Title be granted in its entirety.

10      DATED this 22 day of April, 2015.

11

12                              FIDELITY NATIONAL LAW GROUP

13                              _____
                                MARNI WATKINS, ESQ.
14                              Nevada Bar No. 9674
                                2450 St. Rose Pkwy., Ste. 150
15                              Henderson, Nevada 89074
                                *Attorneys for*
16                              *Chicago Title Company, Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

Fidelity National
Law Group
2450 St. Rose Pkwy., Ste. 150
Henderson, Nevada 89074
(702) 667-3000

Page 8 of 9

## CERTIFICATE OF SERVICE

The undersigned employee of Fidelity National Law Group, hereby certifies that she served a copy of the foregoing **AFFIDAVIT OF SERVICE** upon the following parties on the date below entered via CM/ECF.

Gerald A. Role
U.S. DEPARTMENT OF JUSTICE
P.O. Box 683
Washington, DC 20044
Attorneys for Defendants, United States of America

Vernon Nelson, Jr.
LEWIS BRISBOIS BISGAARD & SMITH
Adam J. Breeden
6385 S. Rainbow Blvd, Suite 600
Las Vegas, NV  89118
Attorneys for Plaintiff, Perfekt Marketing, LLC.

**DATED**: 4/22/15

_____
An employee of Fidelity National Law Group

Fidelity National
Law Group
2450 St. Rose Pkwy., Ste. 150
Henderson, Nevada 89074
(702) 667-3000

Page 9 of 9

# EXHIBIT A

## Escrow Agreement and Related Escrow Instructions

THIS ESCROW AGREEMENT AND RELATED ESCROW INSTRUCTIONS (hereinafter the "**Escrow Agreement**") is made and entered into as of this 5th day of December, 2011, (**"Effective Date"**) by and between LUXURY VACATION DEALS, LLC a Nevada Limited Liability Company, with offices at 3301 W. Spring Mountain Rd., Suite 11, Las Vegas, NV, 89102 (hereinafter, "**LVD**"), and Chicago Title Company, a California corporation with offices at 316 W. Mission Ave., Suite 121, Escondido, CA 92025 (hereinafter "**Chicago**" or "**Escrow Agent**").(Individually, LVD and/or Chicago may be referred to herein as a **"Party"**, and collectively, LUXURY VACATION DEALS, LLC and Chicago may be referred to herein as the **"Parties").**

### W I T N E S S E T H :

**WHEREAS,** LUXURY VACATION DEALS, LLC will be a distributor and shall market and sell sub-license agreements and participation in the TRAVEL TO GO travel club program(**"Club"**) to qualified individuals (**"Purchasers"**)pursuant to purchase agreements executed between LVD and Purchasers setting forth the terms and conditions for such purchases(**"Purchase Agreements") (each Purchase Agreement represents a "Sale").**

**WHEREAS,** LVD desires to enter into an agreement whereby (a) Chicago shall allow LVD the use of Chicago's merchant credit-card account ("**Merchant Account**") for processing, directly into Chicago's escrow trust account, all of Purchasers' deposits for payment of the purchase price for participation in the Club(**"Purchase Price"**); and (b) Chicago shall act as the exclusive Escrow Agent under the Purchase Agreement for holding Purchaser funds in its escrow trust account until such time as all of the instructions to Escrow Agent amended to each Purchase Agreement have been satisfied.

**NOW THEREFORE,** in consideration of the mutual benefits, obligations, terms and conditions herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, it is hereby agreed that this Escrow Agreement shall govern the relationship of Chicago and LVD as it pertains to all Sales by LVD wherein Chicago is named as Escrow Agent in the Purchase Agreements between LVD and Purchasers, as follows:

1. **CHICAGO TITLE "ESCROW AGENT": CONFLICTS; MUTUAL ESCROW INSTRUCTIONS; UNILATERAL ESCROW INSTRUCTIONS; IRREVOCABLE INSTRUCTIONS; CONFLICT IN AGREEMENTS**: Upon Chicago's receipt of Purchaser's 'good funds' deposit into escrow, Chicago shall act as LVD's exclusive Escrow Agent for holding all of Purchaser funds in its escrow trust account until the following conditions have been met:

1.1.a. Chicago has received a copy in escrow of all of the Purchaser's signed Purchase Documents (defined below), and any other purchase related documents Chicago shall require to be signed by LVD and/or Purchaser.  LVD agrees that is shall be a breach of this Escrow Agreement for LVD to withhold submission into escrow of any Purchase Document, or other document, presented to and/or signed by a Purchaser at point-of-sale that induces a Purchaser to purchase a membership in the Club and/or makes representation(s) of the benefits and privileges of the Club; and

1.1.b. Expiration of any applicable statutory rescission period (plus statutory mail delivery time) without such right of rescission having been exercised by Purchaser; and

1.1.c. Expiration of any applicable funding period required by Chicago to disburse escrow funds, which such funding period is usually 1-2 business days after expiration of the rescission period.

1.2. After the occurrence of all of the foregoing provisions, Chicago shall close its escrow and disburse the escrowed funds to LVD less the Approved Escrow Disbursements (defined in Paragraph 4below);

1.3. In the event Chicago should receive, become aware of, or be a part of any conflicting demands, claims or disputes between LVD and Chicago, and/or LVD and a Purchaser, with respect to the funds escrowed under this Agreement or under the Purchase Agreements, or to the rights or benefits in the Program as to any Purchaser, or to any money or property deposited into escrow, Chicago shall have the absolute right, at its absolute sole discretion and option, to discontinue any or all further acts as Escrow Agent under this Agreement until such conflict is resolved to its satisfaction; provided however, in such event, and regardless of Chicago's decision to continue or discontinue its acts as Escrow Agent hereunder, all parties instructions and

1

agreements contained herein shall remain in full force and effect and shall not be terminated or withdrawn unless and until Escrow Agent shall receive all Parties mutual, written instructions or an Order of a Court having competent jurisdiction over this Agreement, settling such conflict.

1.4.    The instructions to Escrow Agent contained in this Agreement intentionally contain instructions for Chicago to act unilaterally, where applicable, without further instructions, verbal or written, required from LVD.

1.5.    All parties hereby agree that these escrow instructions are irrevocable instructions of LVD and may not be amended, supplemented, or revoked, without Chicago's written agreement. In the event LVD should desire to amend, supplement, or revoke these instructions or any provision of this Agreement, and Chicago should not agree, either Party may then terminate this Agreement in accordance with Paragraph 10 below. Until mutual agreement between the Parties to amend or supplement any term of this Agreement, or upon termination of this Agreement, Escrow Agent may rely and act upon the instructions herein given.  Provided however, some agreements contained herein shall survive termination of this Agreement as noted hereafter.

2.    **CLUB OWNER'S JOINDER IN THIS AGREEMENT:**    The owner of the Club is joining into the execution of this Agreement solely as to the provisions set forth in **Exhibit "A"** attached hereto and by this reference made a part hereof.

3.    **CHICAGO TITLE'S MERCHANT ACCOUNT:** Chicago shall allow LVD the use of Chicago's Merchant Account for processing Purchasers' deposits towards payment of the Purchase Price for participation in the Club, together with various other fees and costs associated with such purchase, directly into Chicago's escrow trust account. LVD agrees that Chicago's Merchant Account shall not be utilized for any other purpose than as stated above.  It is agreed that in the event LVD should utilize Chicago's Merchant Account for any unauthorized purpose, Chicago shall refund to the account of the card holder the full amount of any funds received through the unauthorized use, and LVD shall be charged all of Chicago's Merchant Account fees and costs associated with such unauthorized use and refund thereof.

3.1.    Chicago's agreement to allow LVD to utilize Chicago's Merchant Account for processing Purchaser funds directly into Chicago's escrow trust account is given in consideration of all of the terms and conditions contained herein, including but not limited to the following:

3.1.a.    LVD agrees to bear 100% of the actual costs attributed to its use of Chicago's Merchant Account, and to be solely responsible for payment of all fees, costs and expenses charged by Chicago's merchant bank(s) for the use of such Merchant Account privileges and processing of monies received from and refunded to LVD Purchasers, including, but not limited to, the discount fees as stated in Paragraph 4below **("Card Fee(s)");** and it is agreed that Chicago shall be at absolutely no expense for LVD's use Chicago's Merchant Account; and

3.1.b.    LVD shall immediately reimburse LVD's Security Fund account (as defined in Paragraph 5 below)for the total amount of any funds disbursed to Chicago's Merchant Account for any dispute or chargeback debit by a merchant bank against Chicago's Merchant Account from a Purchaser who bought from LVD utilizing Chicago's Merchant Account; and

3.1.c.    LVD shall obtain the signature(s) of each card holder authorizing payment through Chicago's Merchant Account in accordance with the documents set forth in Paragraph 7 below.

4.    **PAYMENT OF CLOSING PROCEEDS; APPROVED ESCROW DISBURSEMENTS:**
In consideration for (i) Chicago's agreement to act as Escrow Agent under the Purchase Agreements for LVD's sales of participation in its Club, and under the terms, conditions and instructions contained in this Agreement; and (ii) Chicago's agreement to allow LVD to utilize Chicago's Merchant Account, for the purposes set-forth hereinabove, LVD hereby irrevocably agrees and so instructs Chicago that prior to disbursement of any escrow proceeds to LVD at each closing from the funds received into Chicago's escrow trust account from each Purchaser **("Closing Proceeds")**, Chicago shall first allocate such Closing Proceeds to pay the Approved Escrow Disbursements set forth in Paragraph 4.1 below and, thereafter, the balance of Closing Proceeds shall be payable to LVD.

4.1.    LVD hereby authorizes and instructs Chicago to make the following disbursements from LVD's Closing Proceeds at each escrow closing("**Approved Escrow Disbursements")**as follows:

4.1.a.    Chicago's fee for its Club escrow and processing service fee as set forth in **Exhibit "B"** attached hereto and by this reference made a part hereof **("Escrow Fee").**

4.1.b.    The actual amount of Card Fee(s) charged by Chicago's Merchant Account bank(s) for processing LVD's credit card authorizations, which the discount fee is currently in the range of1.85-

2.25% for all Visa, MasterCard, and Discover cards (the variance depends upon the consumer's card type), and 3.25% for American Express cards. Provided however, LVD hereby understands and agrees that such Card Fee(s) may be adjusted and increased from time-to-time by Chicago's Merchant Banks and/or the credit-card issuing banks, including application of varying discount rates for one Purchaser from another. LVD hereby agrees to pay the actual Card Fee(s)as charged by the banks. LVD understands and agrees that such Card Fee(s) are assessed, and are due and payable by LVD every time LVD utilizes the Chicago Merchant Account, regardless if a sale is consummated, rescinded, canceled or is chargeback. Furthermore, LVD agrees to pay any fees, costs and/or expenses assessed against Chicago for processing cancellations, rescissions and/or disputes and chargebacks. At the close of each escrow hereunder, Chicago shall withhold the estimated amount of Card Fee(s) that will be due under this paragraph from sale proceeds due LVD and shall deposit such amounts into the Security Fund, defined below; thereafter, and upon receipt by Chicago of the monthly statement(s) from its Merchant Account(s) bank(s), Chicago shall withdraw monies from the Security Fund and pay the actual amount(s) due by LVD for such Card Fee(s); and

4.1.c. Ten percent (10%) of the Purchase Price of each sale by LVD hereunder shall be deposited into LVD's Security Fund Account until such time as LVD's Security Fund Account balance reaches the amount required hereunder as defined in Paragraph 5 below, at which time the10% Withhold may be suspended and no longer withheld unless and until resumed in accordance with Paragraph 5 below; and

4.1.d. Reimbursement of the total amount of any Approved Security Fund Disbursement(s) made from LVD's Security Fund (defined in Paragraph 5 below); and

4.1.e. The amount, plus fees and costs, if any, of any Purchaser's dishonored check (NSF, Stop-Payment, Unauthorized, etc.) deposited into Chicago's escrow trust account and notice of such check being dishonored was not received until after the escrow closing had taken place; and

4.1.f. The face amount of any voucher or incentive promised to a Purchaser by LVD as evidenced by a copy of such item having been provided to Chicago with the Purchase Documents as set forth in Paragraph 1.1.a. above; and

4.1.g. Any additional amount(s) that LVD may authorize in writing from time-to-time; and

4.1.h. The amount required to fund the Adjusted Security Fund Requirement Amount as set forth in Paragraph 5 below; and

4.1.i. In the event that funds from any one escrow should be insufficient to pay any or all of the Approved Escrow Disbursement(s) due at its closing, LVD hereby authorizes Chicago to withhold and pay the Approved Escrow Disbursement(s) due on one or more insufficient escrow closings from multiple LVD closings until all amount(s) due in the insufficient closing(s) have been paid in full; and

4.1.j. After payment of the foregoing Approved Escrow Disbursement(s), Chicago shall pay the balance of proceeds to the LVD by wire transfer to the account designated in writing by LVD to Escrow Agent from time-to-time; and

4.1.k. Chicago is hereby authorized and instructed to disburse the foregoing Approved Escrow Disbursements without notice to LVD or without further instructions required from LVD, verbal or written.

5. **SECURITY FUND:** LVD shall be required to establish a security fund **("Security Fund")** to i) secure the performance of LVD's obligations under this Agreement and under the Purchase Agreement(s) that LVD enters into with Purchasers to sell participation in the Club; and ii) to provide Chicago with a source of readily available LVD funds from which Chicago can immediately draw upon to cover amount(s) due by LVD to Chicago under this Agreement, including but not limited to, the approved disbursements authorized below; and (iii)to cover monies due any Purchaser or third partying the event that LVD breaches or defaults in any provision, agreement, duty, or obligation under a Purchase Agreement.

5.1. The Security Fund shall be established and maintained as follows:

5.1.a. The initial amount required to be in LVD's Security Fund Account is One Hundred Thousand Dollars ($100,000.00) ("Initial Security Fund Amount").

5.1.b. In lieu of requiring LVD to deposit the Initial Security Fund amount with signing of this Agreement, Chicago has agreed to allow LVD to establish the account by allowing Chicago to withhold 10% of the sales price of each Club sale escrow closed hereunder ("10% Withhold"), and to deposit such 10% Withhold into the Security Fund account.

5.1.c. In Paragraph 4 above, LVD has authorized Chicago to deduct the 10% Withhold from its sale proceeds until LVD's Security Fund reaches the Initial Security Fund Account balance, or any Adjusted

3

Security Fund Amount required hereunder (as defined below). At any time during the term of this Agreement should the amount of funds on deposit in LVD's Security Fund Account be less than, or drop below, the then current amount required hereunder, LVD hereby agrees that Chicago shall resume deduction of the 10% Withhold as authorized in Paragraph 4 above to restore, maintain, and fund the Initial or Adjusted Security Fund balance as required hereunder.

5.1.d. From time-to-time during the term of this Agreement, Chicago shall evaluate LVD's sales performance and chargeback history and reasonably determine, in its sole discretion, whether an increase must be made in the Initial Security Fund Amount required of LVD hereunder in order to give Chicago a higher level of security to continue allowing LVD to continue to utilize Chicago's Merchant Account **("Adjusted Security Fund Amount").**Chicago will notice LVD of such Adjusted Security Fund Amount, if any, and thereafter, LVD hereby irrevocably authorizes and instructs Escrow Agent to continue, or immediately resume, the 10% Withhold, in the same manner and instructions as set forth above, as required to maintain the Security Fund balance at the then required amount.

5.1.e. Notwithstanding anything contained herein to the contrary, at any time during the term of this Agreement that Chicago determines, in its sole discretion, that the risk is too great to continue funding the Security Fund with the 10% Withhold amounts, Providers shall make written demand upon LVD for immediate deposit of funds to bring the Security Fund up to the Initial or Adjusted Security Fund Amount. In the event LVD does not immediately deposit the demand amount, then Escrow Agent is hereby irrevocably authorized and instructed by LVD, without further instruction required from LVD, verbal or in written, to withhold from LVD sales proceeds the difference between the Initial or Adjusted Security Fund Amount and the actual amount in the Security Fund account at the time, and so continue such withholding of proceeds until the Initial or Adjusted Security Fund Amount is attained.

5.2. LVD hereby authorizes Chicago to make the following disbursements from its Security Fund account for the following events **("Approved Security Funds Disbursements"):**

5.2.a. Any Purchaser of a Club membership from LVD, for any reason, disputes and/or cancels a credit-card charge processed through Chicago's Merchant Account ("**Chargeback**") after such funds have been paid to LVD; if the Merchant Account bank settles the Chargeback dispute in favor of LVD, then Chicago shall redeposit such amount back into LVD's Security Fund hereunder; and

5.2.b. Any closing proceeds paid to LVD in error, including, but not limited to, by reason that Chicago receives or becomes aware of a Purchaser's valid rescission notice having been given after the respective Purchase's escrow has already been closed and proceeds paid to LVD; and

5.2.c. Any Purchaser gives a valid notice of rescission or cancellation, or is otherwise entitled or has a valid claim, at the sole determination of Chicago, to cancel his/her Club purchase, with the amount drawn from the Security Fund being equal to the full amount of the Purchase Price actually paid by the Purchaser, plus any fees or costs. This provision shall also include any Purchaser who pursues a request to cancel that may not be for valid reason, but whose dissatisfaction with his/her purchase poses a threat and/or negative impact against Chicago and/or the Club, and Chicago determines that refunding the purchase price is the least cost alternative to the negative impact and expense of defending the Purchaser's dissatisfaction and request to cancel; and

5.2.d. Payment of actual merchant account Card Fee(s) attributed to LVD's activity using Chicago's Merchant Account as set forth in Paragraph 4 above; and

5.2.e. A fine, penalty, award, damages or interest instructed, ordered, or imposed by any federal, state or local court or governmental agency is required to be paid as a result of LVD's breach of its obligations under the Distribution Agreement and the LVD does not timely pay such in full; and

5.2.f. LVD defaults or breaches any term or agreement under this Agreement, the Fulfillment and Distribution Agreement (defined below), or under any other agreement pertaining to Sales of participation in the Club by LVD, and LVD does not fully satisfy or cure such default or breach after expiration of Ten (10) business days after notice thereof has been given to LVD, then Chicago may pay such funds as are required to cure such default or breach. In the event LVD provides Chicago, within said 10-day period, with evidence of having satisfied the default or breach, and the other party does not agree, Chicago may withhold disbursement until the parties mutually instruct Chicago as to a resolution of the matter; and

5.2.g. In the event Chicago determines, in its sole discretion, and after having first given LVD Ten (10) days notice, that an impropriety has been alleged in the sales process and a Purchaser's funds should be returned and the Club participation purchase cancelled, Escrow Agent is hereby irrevocably authorized and instructed to refund such monies directly to the Purchaser in the exact amount previously paid by such Purchaser; and

4

5.2.h. Any fees or costs, including reasonable attorney's fees, incurred by Chicago in i) protecting the integrity of the Chicago escrow trust accounts and/or its Merchant Accounts; 2) to enforce the terms and conditions of this Agreement and/or an individual purchaser's Purchase Agreement.; and 3) to enforce or defend any claim, dispute or action brought by or against Chicago as a result of LVD's action(s) or non-action(s) as it pertains to LVD's agreements, duties and/or responsibilities under this Agreement and/or an individual purchaser's Purchase Agreement; and

5.2.i. Chicago is hereby authorized and instructed to make such Approved Disbursement(s), set forth in 5.2.a-i above, from LVD's Security Fund, under the terms and conditions set forth herein, without further instruction, verbal or written, required from LVD to Chicago, and Chicago shall timely notice LVD after any such Approved Disbursement has been made.

5.3 Upon termination of this Agreement, Chicago shall unconditionally retain the Security Fund for the purposes for which it was intended as set forth above for i) one (1) year after the last closing of an escrow for a sale made by LVD hereunder; or ii)finalization of the last dispute/chargeback by a Purchaser having purchased from LVD hereunder, whichever date is the later.  At the end of such applicable period, Chicago, using its reasonable business judgment, shall evaluate the risk that remains of any Purchaser(s) likely to make a dispute/chargeback against LVD and Chicago's Merchant Account, and Chicago shall determine, in its sole discretion, whether any Security Funds shall remain on deposit or be released to LVD and the terms and conditions for such continued hold.  Prior to release of Security Fund(s) to LVD under this paragraph, LVD and the Club owner (as defined below) shall sign a General Release and Estoppel to Chicago certifying that LVD has no outstanding claims, disputes, issues or questions regarding disbursements made, or to be made, from the Security Fund.  It is understood and agreed that Chicago shall not release the Security Fund(s) under this paragraph until claims, disputes, issues or questions between the parties has been resolved and both parties have signed the General Release and Estoppel.

6. **FAILURE OF PURCHASER'S FORM OF PAYMENT:** In the event a purchaser's original form of payment of the purchase price for a Program Membership should fail for any reason after the rescission period has expired, Chicago may, but is not obligated or required to, on behalf of LVD, send the Purchase Agreement to a collections agency to pursue payment of all monies due under the Purchase Agreement by another form of payment, as provided for under the terms of the Purchase Agreement.  It is understood and agreed that any recovery of payment shall be first applied to all fees and costs of the collections agency and Chicago and the balance applied towards the debit against LVD's Security Fund for the failure of Purchaser's original form of payment. LVD agrees that the collections agency may use whatever legal means it deems necessary to obtain payment.  LVD authorizes and instructs Chicago to execute, on its behalf, whatsoever documentation is required of the collections agency to pursue payment hereunder.

7. **POINT-OF-SALE PURCHASE AND ESCROW DOCUMENTS:**   LVD agrees that the Purchase Documents attached hereto as Exhibit "C" represent the Purchase Agreement and all other sales documents that have been approved, and/or provided, by the Club owner, and will be given to Purchasers at point-of-sale to identify the privileges and benefits that each Purchaser(s) will receive upon close of escrow and becoming a Member of the Club ("Purchase Document(s)").

7.1. Attached hereto as **Exhibit "D"** is a copy of Chicago Title's Escrow Instructions Paragraph ("**Escrow Instructions Paragraph**") that is required to be incorporated into LVD Purchase Agreement that will be signed by each Purchaser and LVD to consummate a Sale.  LVD understands that in the event a Purchase Agreement does not include the Escrow Instructions Paragraph, Chicago cannot close the Sale Escrow until Chicago receives a copy signed by LVD and the Purchaser(s).

7.2. Additional documents required by Chicago for processing and closing certain Sale Escrows are attached hereto, and by this reference made a part hereof, as follows:

7.2.a. Credit Card Authorization. LVD shall obtain the signature(s) of each card holder authorizing payment through Chicago's Merchant Account hereunder on the attached form **Credit Card Authorization attached hereto as Exhibit "E".**

7.2.b. Third Party Credit Card Authorization. In the event a party other than the named Purchaser(s) signing a Membership Agreement ("**Third Party**") authorizes the Third Party's credit card to be utilized to pay all or a portion of the purchase price of the Membership, LVD agrees to obtain the signature of the Third Party card holder on the **Third Party Credit Card Agreement attached hereto as Exhibit "F"**. LVD acknowledges its understanding that Chicago will not close an Escrow wherein Third Party funds are authorized without the Third Party Credit Card Agreement signed by the card holder.

5

7.2.c.   Reinstatement of Membership Purchase and Re-Authorization of Credit Card Charge. In the event a Purchaser should rescind the purchase of a Membership prior to close of Escrow, LVD agrees to obtain the signature of the Purchaser(s) on the **Reinstatement of Membership Purchase and Re-Authorization of Credit Card Charge ("Reinstatement") attached hereto as Exhibit "G".** LVD acknowledges its understanding that Chicago will not close an Escrow for a Sale that has been rescinded without the Reinstatement document signed by the Purchaser(s). LVD further acknowledges that a new 3-day Right to Cancel applies after the reinstatement has been signed by the Purchaser(s).

7.3.   LVD hereby agrees that there shall be no changes, additions, or deletions to the Purchase Documents **("Changed Purchase Document(s)")** unless and until i) the Club owner has approved such Change Purchase Document(s), and ii) Chicago has been provided with a copy of such Changed Purchase Document(s).

7.4.   In the event LVD should provide any Purchaser with a cash value travel Voucher or other cash equivalent incentive, LVD hereby agrees that it will include a copy of such voucher or incentive with the Purchase Documents sent to Chicago for such Sale hereunder, and Chicago shall withhold the cash value of the voucher or incentive from LVD Sales proceeds at close of Escrow in accordance with Paragraph No. 4.1.f. above.

8.   **RESCISSION NOTICE; COMPLIANCE WITH LAW(S):**

8.1.   LVD agrees that the rescission notice that is provided to Purchaser(s) in the Purchase Document(s) shall at all times comply with the applicable law(s) of the applicable state in which each sale takes place for which a Purchase Agreement is deposited into escrow hereunder**("Sale")**.

8.1.a.   LVD agrees that the rescission notice set forth in each Purchase Agreement shall provide for the notice(s) of rescission to be provided to Chicago by Purchaser(s) desiring to cancel their purchase so that an escrow is not closed and funds disbursed on a sale wherein the Purchaser rescinded with the applicable rescission time period.

8.1.b.   It is agreed that in the event Chicago should receive an election to cancel from a Purchaser that was given within the rescission period, Chicago shall refund the entirety of that Purchaser's deposit and Chicago shall notice LVD that the sale has been cancelled. However, in the event that an election to cancel is received by Chicago for a Sale that was sent after expiration of the applicable rescission time period, and the escrow for such Sale has not closed, Chicago shall notice LVD and receive instruction from LVD as to disposition of the Sale and Purchaser's deposit.

8.2.   LVD agrees to comply with all applicable law(s), rule(s), regulation(s), and licensing requirement(s) **("Law(s)")**of the applicable state(s) in which each Sale takes place.

8.3.   For each Sale hereunder, LVD agrees that it shall have the sole duty and responsibility) to i) determine the state(s) applicable to each of its Sale(s);  ii) to know the applicable Law(s) for compliance in each state; and iii) to comply with the applicable state Law(s).It is further agrees that Chicago shall have no duty to determine or verify that LVD has complied with the foregoing provisions.

9.   **INDEMNITY OF CHICAGO:**  LVD hereby agrees to indemnify, hold harmless, and defend Chicago, as well as its shareholders, officers, directors, representatives, agents and employees, from all damages, losses, causes of action, costs, and expenses, including reasonable attorney's fees, whether the same be incurred as a result of processing, handling, investigation, defense or prosecution of any claim or cause of action, or any other loss resulting as a consequence of i) LVD's use (whether it be authorized or unauthorized) (including its employees, agents, representatives, and/or affiliates) of Chicago's Merchant Account(s) or ii) a breach by LVD (including its employees, agents, representatives, and/or affiliates) of the terms of this Agreement or of any of its representations, warranties, duties, or obligations under this Agreement, or under the Purchase Agreement between LVD and a Purchaser, including, without limitation, from any and all misrepresentations, bad faith acts, allegations of deceptive trade practices, or violation of any laws, rules or regulations against LVD or any of its employees, affiliates, representatives and/or agents, and such breach causes Chicago to suffer actual or threat of damage, loss, cost, expense or action against Chicago and/or its Merchant Account; and, iii) acts by Chicago in good faith in fulfilling the terms of this Agreement on behalf of the interests of all Parties hereto. The foregoing provision shall survive the termination of this Agreement.

10.   **TERM OF THIS AGREEMENT; TERMINATION:** This Agreement shall become effective upon the date first written on page one hereof **("Effective Date")** and shall continue in full force and effect for a period of one year thereafter OR upon that date which either party shall give the other thirty (30) days prior written notice of election to terminate, whichever date is the later. Upon termination of this Agreement, all Parties shall honor and fulfill all of its

respective duties and responsibilities under this Agreement as it pertains to closing all Purchase Agreements that are pending prior to termination hereof.

10.1   <u>Early Termination – LVD Unacceptable Activity:</u>  In the event that Chicago becomes aware of any activity by LVD in the sales process, or any other of LVD's processes, that Chicago determines in its sole discretion such activity has caused a Purchaser to dispute a purchase and/or may cause future purchaser's to dispute as well, and/or will negatively affect Chicago, and/or will jeopardize the Chicago Merchant Account, Chicago may give LVD immediate notice of such unacceptable activity, and may immediately terminate this Escrow Agreement if the activity is not immediately handled or remedied to Chicago's satisfaction.

10.2   <u>Early Termination – Travel Unacceptable Activity:</u>  In the event that Chicago becomes aware of any activity by Travel in the fulfillment process, or any other of Travel's processes, that Chicago determines in its sole discretion such activity has caused a Purchaser to dispute a purchase and/or may cause future Purchaser's to dispute as well, and/or will negatively affect Chicago, and/or will jeopardize the Chicago Merchant Account, Chicago may give LVD immediate notice of such unacceptable activity by Travel, and Chicago may immediately terminate this Escrow Agreement if the unacceptable activity is not immediately handled or remedied to Chicago's satisfaction.

## ADDITIONAL INSTRUCTIONS & PROVISIONS:

11.   **Governing Law; Interpretation.** This Agreement and the rights, duties and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of California, regardless of conflict of laws principles.  This Agreement has been reached by negotiation between the parties and shall therefore not be construed against the drafter of the Agreement.

12.   **Counterparts; Facsimile Signature.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same document. The telecopied, digital, or facsimile signature of a party on any counterpart of this Agreement shall be deemed to be an original signature of that party, shall be binding upon the signer for all purposes, and may be relied upon by all other parties to this Agreement.  However, upon written request from any party to any other party who has submitted a telecopied, digital, or facsimile signature, such party will confirm its telecopied, digital, or facsimile signature by providing an original of this Agreement bearing such party's original signature.

13.   **Entire Agreement.**    This Agreement contains the entire agreement between the parties relating to the subject matter hereof and may be amended only by written agreement signed by all parties hereto.  This Agreement cancels and supersedes all agreements and/or representations, oral and/or written, between the parties dated prior hereto regarding the subject matter hereof.

14.   **Assignment.**    All parties agree that this Agreement shall be binding upon the successors and assigns of each party, and shall inure to the benefit of each party's successors and assigns; provided however, the parties rights under this Agreement may not be assigned without written consent of all other parties hereto. The death, incapacity, lack of authority, disability, and/or the dissolution of any party shall not terminate or otherwise impair that party's rights, nor any other party's rights, under this Agreement.

15.   **Waiver.** No course of dealing or failure by either party to strictly enforce any term, right, or condition of this Agreement shall be construed as a waiver of such term, right, or condition.

16.   **Force Majeure.** Neither party to this Agreement shall be considered to be in default of its obligations under this Agreement to the extent that failure to perform any such obligation arises from causes beyond the control and without the fault or negligence of the affected party.

17.   **Severability.** If any provision of this Agreement is or becomes void or unenforceable by force or operation of law, the other provisions shall remain valid and enforceable.

18.   **Survival.** Paragraphs 2, 5, 6 and 7 hereof shall survive termination of this Agreement.

19.   **Notices.** All notices required or permitted hereunder will be in writing, to the addresses set forth above (or to such other address of which either party may notify the other in a notice that complies with the provisions of this section), and will be deemed to have been properly given: (i) upon delivery if delivered personally or by a courier or overnight delivery service; or (ii) five (5) business days after mailing by certified mail, postage prepaid, return receipt requested.  Advance transmission of such notice via facsimile or digital scan (e-mail) shall not be deemed proper delivery of such notice.

20.   **Attorneys' Fees and Legal Expenses.** Should either party hereto institute any action or proceeding in court to enforce any provision hereof or for losses or damages by reason of any alleged breach of any provision of this Agreement or for any other judicial remedy, the prevailing party shall be entitled to receive from the losing party all reasonable attorneys' fees and all court costs incurred in connection with said proceeding.

21. **Relationship of the Parties.** The relationship established by this Agreement is that of Escrow Agent and principal.  Nothing contained herein shall be deemed or considered to create or constitute a partnership, joint venture or any other similar type of association or relationship between the parties.

22. **Confidentiality.**  This Agreement is deemed and considered confidential between the parties and its contents shall not be disclosed to any third party without written permission of the non-disclosing party.  Both parties hereby agree that this Agreement and its contents benefit Purchasers and its contents may be shared with such Purchasers.

**IN WITNESS WHEREOF**, the parties have executed this Escrow Agreement and Related Escrow Instructions as of the Effective Date written on page one hereof.

<u>LVD:</u>

LUXURY VACATION DEALS, LLC
INSERT LLC INFORMATION

By: _____
Printed Name:  LAURA VADILLO
Its: <u>President</u>

By: _____
Printed Name:  HENRY INGIER
Its:  <u>Director</u>

3301 W. Spring Mountain Rd., Suite 11
Las Vegas, NV  89102
Tele:
Fax: _____
Email:

<u>CHICAGO:</u>

**CHICAGO TITLE COMPANY,**
a California Corporation

By: _____
Printed Name: JoAnn Lockard
Its:  Vice President

316 W Mission Ave., Suite 121
Escondido, CA  92025
Tele: 760/546-1001
Fax: 760-781-4017
Email: lockardj@ctt.com

<u>**PERSONAL GUARANTEE SET FORTH ON THE NEXT PAGE**</u>

8

## PERSONAL GUARANTEE TO CHICAGO TITLE COMPANY:

The undersigned, an individual, for and in consideration of the benefits and agreements received that are set forth in the entirety of this Escrow Agreement, does hereby unconditionally and irrevocably guarantee to Chicago the full, prompt, and complete performance by LVD of all of the agreements, terms, and conditions of i) this Escrow Agreement, including any amendments hereto; ii) the Purchase Documents executed between LVD, Purchasers, and/or Chicago that include escrow instructions to Chicago; and iii) the Fulfillment and Distribution Agreement (defined in Exhibit "A" below)  as it pertains to the duties and responsibilities of LVD to Purchaser(s) and/or Chicago as Escrow Agent of the parties.

In the event that LVD should breach any of its performance(s) as set forth herein, and such breach(s) should cause monetary loss(s) or damage(s) to Chicago, whether directly or indirectly, the undersigned hereby agrees that, upon demand, the undersigned shall personally reimburse and pay to Chicago the amount of such loss(s) or damage(s), including reasonable attorney fees, litigation costs, alternative dispute resolution expense, and whatsoever other fees and costs Chicago shall suffer in defending, determining, and/or collecting the loss(s) or damage(s) to Chicago hereunder.

In the event the undersigned breaches this Personal Guarantee of Chicago, the undersigned hereby agrees that Chicago may pursue recovery of its loss(s) and/or damage(s) for any breach(s)  i) by LVD as set forth above; and/or  ii) by the undersigned, including any additional and reasonable attorney fees, litigation costs, alternative dispute resolution expense, and whatsoever other fees and costs Chicago shall suffer in defending, determining, and/or collecting the loss(s) or damage(s) to Chicago by the breach(s) of the undersigned, by whatsoever lawful means or remedy(s) shall be available to Chicago, at law or in equity, including judgment and recovery against the personal assets of the undersigned.

| | |
|---|---|
| _____ | _____ |
| Signature of Individual Guarantor | Signature of Individual Guarantor |
| _____ | _____ |
| Printed Name of Guarantor – **LAURA VADILLO** | Printed Name of Guarantor  **HENRY INGIER** |

Address: _____        Address: _____

_____                _____

_____                _____

Phone: _____        Phone: _____

Email: _____        Email: _____

TIN: _____          TIN: _____

9

## EXHIBIT "A"

## CLUB  OWNER'S APPROVAL AND AGREEMENTS:

A.|     The undersigned JD and T ENTERPRISES, INC., a California corporation, dba Travel To Go **("Travel")** is the owner and promoter of the Club, and hereby agrees as follows:

A.1.|     Travel and LVD have entered into that certain Distribution And Fulfillment Agreement dated December 5th, 2011**("Fulfillment Agreement"),**a copy of said agreement being attached hereto and by this reference made a part hereof designated as **Exhibit "H"**), wherein Travel has granted and accepted LVD as a distributor of the Club that allows LVD to sell sub-license agreements to Purchasers to become members in the Club, as set forth above in the terms and conditions of this Escrow Agreement; and

A.2.|     Upon receipt of each Purchaser(s) Program Fee paid to Travel at close of each Sale escrow, as set forth in the Fulfillment Agreement, Purchaser(s) shall become a participant and member of the Club and Travel hereby agrees to provides and fulfill, among other things, the right and sub-license to Purchaser(s) to access and utilize the privileges and benefits of the Club as set forth in the Fulfillment Agreement, Club Program materials, and Purchase Agreements.

A.3.|     Travel hereby acknowledges that Travel has read and approves of the terms and conditions regarding Chicago's services as Escrow Agent for the Sales by LVD to Purchasers for participation in its Club as set forth in the entirety of this Escrow Agreement.

B.|     **POINT-OF-SALE PURCHASE DOCUMENTS:** Travel hereby agrees that the documents attached hereto as Exhibit "C" represent the Purchase Agreement and other sales documents that have been approved, and/or provided, by Travel to be given to Purchasers at point-of-sale to identify the privileges and benefits that each Purchaser(s) will receive upon close of escrow and becoming a member of the Club. Travel hereby agrees that LVD is not authorized, and Travel shall not authorize, any changes, additions, or deletions to be made to the Purchase Document(s) unless and until Chicago has been provided with a copy of such changed Purchase Document(s).

B.1.|     Travel hereby acknowledges to Chicago that Travel requires LVD to obtain original 'wet' signatures from all Purchaser(s) on all applicable Purchase Documents, and Travel requires that LVD provide Escrow Agent a copy of all signed Purchase Documents, and any other documents utilized in the sales process, that are signed by Purchasers or were presented to a Purchaser to induce a Purchaser to purchase a membership in the Club and/or makes representation(s) of the benefits and privileges of the Club,

C.|     **TERMINATION:** In the event that Chicago becomes aware of any activity by Travel in the fulfillment process, or any other of Travel's processes, that Chicago determines in its sole discretion such activity has caused a Purchaser to dispute a purchase and may cause future Purchaser's to dispute as well, and/or will negatively affect Chicago, and/or will jeopardize the Chicago Merchant Account, Chicago may give LVD immediate notice of such unacceptable activity by Travel, and Chicago may immediately terminate this Escrow Agreement if the unacceptable activity is not immediately handled or remedied to Chicago's satisfaction.

D.|     **RESCISSION NOTICE; COMPLIANCE WITH LAW(S):**
D.1.|     Travel agrees that it will enforce the agreement set forth above wherein LVD agrees that the rescission notice that is provided to Purchaser(s)in the Purchase Document(s)shall at all times comply with the applicable law(s) of  the applicable state in which a Sale takes place.
D.1.a.|   Travel also agrees that it will enforce the agreement set forth above wherein LVD agrees that the rescission notice set forth in each Purchase Agreement shall provide for the notice(s) of rescission to be provided to Chicago by Purchaser(s) desiring to cancel their purchase so that an escrow is not closed and funds disbursed on a sale wherein the Purchaser rescinded with the applicable rescission time period.
D.2.|     Travel agrees that it will require LVD to comply with all applicable Law(s) of the applicable state(s) in which each Sale of participation in the Club by LVD takes place.
D.3.|     Travel acknowledges and agrees that LVD Chicago shall have no   duty and responsibility i) to determine the state(s) applicable to each of its Sale(s);  ii) to know the applicable Law(s) for compliance in each state; and iii) to comply with the applicable state Law(s).

E.   Travel acknowledges that the volume discount fee set forth in Exhibit "B" may be withdrawn by Chicago Title, after 30-days written notice, in the event that the total volume of escrows closed by Chicago per month from all Travel distributors is not significant enough to warrant the discount.

F.   Travel hereby agrees to indemnify, hold harmless, and defend Chicago, as well as its shareholders, officers, directors, representatives, agents and employees, from all damages, losses, causes of action, costs, and expenses, including reasonable attorney's fees (**"Loss"**) to Chicago and/or its Merchant Account, whether the Loss be incurred as a result of processing, handling, investigation, defense or prosecution of any claim or cause of action, or as a consequence of a breach by Travel, including its employees, agents, representatives, and/or affiliates(**"Travel, et al"),** and including, without limitation, from any and all misrepresentations, bad faith acts, allegations of deceptive trade practices, or violation of any laws, rules or regulations against Travel, et al, i) in providing and fulfilling the Benefits of the Club to a Member(s), including, but not limited to, any of its representations, warranties, duties, or obligations under this Agreement and the Purchase Documents provided to each Member(s) by LVD at point-of-sale for participation in the Club; and ii) in any of the agreements, duties, and obligations of Travel to Chicago under this Agreement.  The foregoing provision shall survive the termination of this Agreement.

**Agreed, accepted, and approved:**

<u>**Travel:**</u>

**JD and T ENTERPRISES, INC., a California corporation, dba Travel-To-Go**

BY: _____

Printed Name: _____     Date

Title: _____

Address: _____

_____

_____

Phone: _____

Email: _____

## Exhibit "B"

## FEES

**Escrow Fees:** It is agreed that Chicago shall receive a $200 Escrow Fee from the proceeds of each closed escrow for a Sale hereunder.  LVD hereby authorizes and instructs Chicago to pay the Escrow Fee due Chicago from sales proceeds at the close of each escrow in accordance with the provisions of Paragraph 4 above.

Provided however, it is understood and agreed that Chicago's Escrow Fee set forth above is a volume discount fee and is based upon Chicago closing escrows from sales by all distributors of the Club.  The volume discount fee may be withdrawn by Chicago Title, after a 30-days written notice, in the event that the total volume of escrows closed by Chicago per month from all Travel distributors is not significant enough to warrant the discount. Chicago's escrow fee without the discount is $250 per closed escrow.

**Cancellation Fees:**  In the event an escrow is cancelled prior to the close of escrow and Purchaser's deposit is refunded, Chicago shall not charge a fee for handling that escrow; provided however, LVD understands and agrees that LVD will have the expense of Chicago's Merchant Account Fee(s) as set forth in Paragraph 3 above for any Purchaser's funds that are deposited into escrow and then refunded.

In the event an escrow is cancelled after the escrow has closed and Chicago has disbursed Purchaser's funds, Chicago shall retain its Escrow Fee and it will not be refunded.

12

# EXHIBIT "C"

## APROVED PURCHASE DOCUMENTS

EXHIBIT "D"

**ESCROW INSTRUCTIONS PARAGRAPH**

**(No less than 10 pt. type)**

**ESCOW INSTRUCTIONS TO CHICAGO TITLE COMPANY ("ESCROW AGENT"):** By my signature affixed to this Membership Agreement, Distributor and Member(s) hereby agree that: 1.  These paragraphs shall constitute an escrow instruction and agreement by the Member(s) and the Distributor to Chicago Title Company, a California corporation and licensed Escrow Agent ("Chicago"), to open an Escrow and act as our Escrow Agent for the monies deposited by the Member(s) into Escrow for purchase of the Membership represented herein. Chicago shall hold Member(s) funds in its Escrow trust account (without interest) and shall not close this Escrow until such time as Chicago shall (1) receive Member(s) signed Membership Agreement, Acknowledgment of Benefits and Services and Receipt for Program Materials; and (2) expiration of the rescission period applicable to this purchase without Chicago's receipt of a Request to Cancel from the Member(s), for which  Member(s) have signed a receipt acknowledging Member(s) Right to Cancel and the timeframe and correct procedures for giving Chicago proper Notice exercising such right.  Member(s) hereby acknowledge and understand that if a correct Notice to Cancel is not given to Escrow in the applicable timeframe, this Escrow will close and Member(s) monies will be disbursed and Member(s) may not receive a refund. At such time as Chicago shall disburse Member(s) monies deposited into this Escrow to the Distributor (or as the Distributor instructs) this Escrow shall be deemed closed and Chicago's duties as Escrow Agent shall be over. Chicago's sole duty as Escrow Agent shall be to receive and disburse Member(s) monies in accordance with these instructions and as determined by statute and customary practice in the State of California, United States of America.

2. Chicago, as Escrow Agent, is neutral and independent from Travel To Go and Distributor, and nothing contained herein shall be construed to create a partnership, joint venture, or otherwise, between, Travel To Go, Distributor, Member(s) and/or Chicago.

3. Chicago, acting as Escrow Agent hereunder, shall in no event be construed as a representation, warranty, endorsement or guaranty by Chicago as to the validity, marketability, or merchantability of the Club or the Membership sold by Distributor hereunder nor for any representation, guarantee or promise made by the Club or the Distributor to any Member hereunder or in the sales presentation and/or process for purchase of the Membership or for the delivery thereof.

4.  If, after close of Escrow, a Member should have a dispute with the Club or the Distributor and seek a refund or cancellation this transaction, I understand that Escrow Agent will already have disbursed Member(s) funds and Escrow Agent shall no longer have any duty, responsibility or liability to Member(s) for a refund and Member(s) agree to seek settlement of the dispute and/or a refund directly from the Distributor.

5.  Time is of the essence in this transaction.

14

**EXHIBIT "E"**

TO:    CHICAGO TITLE COMPANY   - Escrow Agent

## CREDIT CARD AUTHORIZATION

Multiple Credit Card Authorizations:  You must use a separate authorization form for each credit card given.

**The information below is given in strict confidence and must be complete and correct for this authorization to be valid.**

**Member Name(s):** _____
Please Print

**Member Number:** _____   Date:_____
(Fill in date you are signing this form the same as other purchase documents)

I_____ hereby authorize Chicago Title Company to charge my credit card for
(Fill in your name exactly as it appears on your credit card)

$_____US CURRENCY for my Purchase of a LUXURY VACATION DEALS, LLC Membership
(Enter total amount to be charged to your credit card)

Please charge my credit card: (circle one):  VISA / MASTERCARD / AMERICAN EXPRESS / DISCOVER

Credit Card Number:     [_____]   Fill in exactly as stated on your card

Credit Card Source Code:   [_____]   Found on back of V/MC/Disc - Front of AMX

Expiration Date (month/year) [_____]   Fill in exactly as stated on your card

Card Billing/Mailing Address: [_____]

Credit card charge will appear on your credit card statement as "Chicago Title"

I hereby give this one-time authorization to Chicago Title Company to debit the amount set forth above against my credit card as payment in full of the total purchase price and costs for my LVD Travel Club Membership ("**Membership**") referenced above; and I authorize Chicago Title, as my Escrow Agent, to receipt and disburse my funds hereunder strictly in accordance with my signed Membership Agreement & Escrow Instructions of same date as this authorization.  By my signature below, I hereby acknowledge receipt of my entire Membership that consists of my Member Number, my Membership Kit, and all of the Program Materials that provide me with full access to all of the goods, benefits, and/or  services of the Membership for which the purchase price hereunder has been paid.
Foreign Currency Disclosure:  Escrow Agent does not accept foreign currency into Escrow, all funds must be paid in US Currency.

→ → YOU MUST ATTACH A COPY OF THE FRONT/BACK OF THE CREDIT CARD  and
A COPY OF THE FRONT/BACK OF THE CARD HOLDER'S DRIVERS LICENSE/PASSPORT I.D.

By my signature below, I hereby agree to the above terms and conditions of this credit card authorization and I agree to perform the obligations set forth in the Membership Agreement  and Escrow Instructions I entered into (of this same date) with LUXURY VACATION DEALS, LLC and Chicago Title.

_____      _____
Credit Card Holder – sign name as it appears on the credit card      Buyer


_____      _____
Buyer      Buyer

15

EXHIBIT "F"

---

## THIRD PARTY AUTHORIZATION FOR CREDIT CARD FUNDS DEPOSIT INTO ESCROW ON BEHALF OF A PURCHASER OTHER THAN THE CARD HOLDER

**To:**   **Chicago Title Company, Escrow Agent**       Date: _____

Re:   Membership Number: _____

Purchaser(s): _____
<br>             Fill in the name(s) of purchaser(s) of the Membership for which the credit card was given

---

The undersigned _____ is the holder/payor of the credit card that was
<br>            Fill in the full name from the credit card

submitted to Chicago Title Company and authorization given for payment against such credit card in the amount
of $_____ US Currency  for purchase of a LUXURY VACATION DEALS, LLC Membership
<br>    ("Membership")        Fill in the amount authorized.


 The undersigned Card Holder hereby acknowledges and approves that:

i) Ownership of the Membership shall vest solely in the name(s) of the above named Purchaser(s) and the
underlined <u>undersigned Card Holder will not be named as an owner of the Membership</u>; and

ii) Chicago Title shall use the authorized payment amount solely in accordance with the Membership
Agreement and Escrow Instructions, and any other purchase documents, signed by the above named
Purchaser(s) and not signed by the Card Holder, but for which Card Holder hereby acknowledges having
received a copy; and

iii) The undersigned Card Holder shall receive nothing in return from seller, LUXURY VACATION DEALS, LLC,
or from escrow for the use of funds authorized by the Card Holder hereunder to purchase a Membership
solely for the Purchasers stated above; and

iv) any refund of any portion of the authorized payment hereunder shall be in the form of a credit back to
the Card Holder onto the same credit card from which the funds were received.

---

**Signature of Card Holder <u>exactly</u> as name appears on the credit card**


---

**A LEGIBLE COPY OF THE FRONT AND BACK OF THE CARD HOLDER'S DRIVERS LICENSE/PASSPORT  AND  A COPY OF THE FRONT AND BACK OF THE CREDIT CARD MUST ACCOMPANY THE SIGNED CREDIT CARD AUTHORIZATION BEFORE CHICAGO TITLE WILL ACCEPT THE CREDIT CARD PAYMENT INTO THE ESCROW.**

<u>EXHIBIT "G"</u>

---

**REINSTATEMENT OF MEMBERSHIP PURCHASE**
**AND RE-AUTHORIZATION OF CREDIT CARD CHARGE**

---

**TO: Chicago Title Company, Escrow Agent**

---

**Today's Date:** _____   **Member Number:** _____   **Seller: LUXURY VACATION DEALS, LLC**

**Purchasers:** _____

Fill in the name(s) of all Purchaser(s) from the Membership Agreement that was cancelled

---

This is to verify that the undersigned is/are the above named Purchaser(s) of the Travel Membership referenced above, for which a signed Membership Agreement and Escrow Instructions, dated _____, was submitted into escrow, and subsequently the undersigned submitted a written cancellation/rescission notice of such Membership Agreement.

The undersigned hereby acknowledges to Seller and Chicago Title that I have reconsidered cancellation/rescission of my Membership purchase and I hereby acknowledge and agree that I no longer desire to cancel/rescind the Membership purchase and I would like to reinstate and continue with the purchase of my Membership under the same documents and the same terms and conditions as I agreed to in the Membership Agreement and Escrow Instructions referenced above, and all other related purchase documents that I originally signed on the same date and submitted into escrow prior to giving my notice of cancellation/rescission.

I hereby rescind and cancel any dispute or chargeback regarding this Membership purchase that I have initiated with my credit card bank prior to the date hereof, and <u>in the event a refund of my original credit card authorization for purchase of my Membership has been processed, I hereby reinstate my original credit card authorization and re-authorize Chicago Title to again charge my credit card for the Membership purchase price  amount of $_____ (I only authorize one purchase price amount  to be charged against my credit card in this entire transaction.)</u>

---

You have the right to rescind this transaction for a period of three (3) business days after the date of this agreement.  Saturday is considered a business day.  In no event will the rescission period be shortened nor may it be waived.  <u>You must deliver written notice of your desire to rescind this transaction by first class mail (with proof of mailing) postmarked before 12:00 midnight of the third business day after the date of this agreement, to LUXURY VACATION DEALS, LLC -3301 W. Spring Mountain Rd., Suite 11, Las Vegas, NV 89102 and/or to Escrow Agent Chicago Title Company via fax: 760-888-4172, e-mail: lauryl.crane@ctt.com, or by mail to 316 W. Mission Avenue, Ste. 121, Escondido, CA  92025.</u> ALSO you must return to LUXURY VACATION DEALS, LLC <u>at the address above,</u> all Program Materials (in the same new condition) that were provided to you at the time of purchase of your Plan.  If you cancel in accordance with the terms herein you will receive a refund within 15 business days of the date upon which you gave notice of cancellation or the date LVD  Concierge Services receives the return of your Program Materials, whichever date is the later.  If you do not return your Program Materials (in the condition in which they were received) within seven (7) business days after you send written Notice of Rescission you will be charged an additional $____ Program Materials replacement fee. The replacement fee shall be withheld by Escrow Agent from any refund due Member hereunder.

---

_____

Signature of Credit Card holder - exactly as name appears on the credit card

_____      _____
Purchaser Signature                               Purchaser Signature

_____      _____
Purchaser Signature                               Purchaser Signature

<u>CREDIT CARD HOLDER AND ALL PURCHASERS MUST SIGN TO REINSTATE THE MEMBERSHIP PURCHASE</u>

**EXHIBIT "H"**

**FULFILLMENT AGREEMENT**

---

**INSTRUCTIONS TO CHICAGO TITLE FOR WIRE TRANSFER OF SALES PROCEEDS AND ANY OTHER FUNDS DUE AND PAYABLE TO LUXURY VACATION DEALS, LLC BY CHICAGO TITLE**

---

The undersigned owner(s) of LUXURY VACATION DEALS, LLC do hereby authorized and instruct Chicago Title to disburse Sale proceeds and/or any funds due LUXURY VACATION DEALS, LLC from any escrow for the Sale of a Club Membership hereunder, to LUXURY VACATION DEALS, LLC as follows:

**Name of Bank:**   _____

**Address of Bank:**   _____

                               _____

**Bank Routing (ABA) No.**  _____

**Bank Swift No.**      _____

**Account No:**        _____

**Name of Account Holder:**_____

**LUXURY VACATION DEALS, LLC:**

**LUXURY VACATION DEALS, LLC,**
("A/AN NEVADA LIMITED LIABILITY COMPANY)

By: _____
Printed Name:   LAURA VADILLO
Its:   PRESIDENT_____

By: _____
Printed Name:  HENRY INGIER
Its:   DIRECTOR_____

19

In order for Escrow personal to make contact with the correct person/persons at the distributor that can assist with various issues and expedite the closing of sales, please complete the questions below with the name(s) of the contact person/persons (i.e. sales person, office administration personnel, accounting personnel; distributor, etc.):

TO:  CHICAGO TITLE COMPANY - ESCSROW AGENT

| Who should escrow contact at the distributor to notice of any problems with sales documents? | _____ |
|---|---|

| Who should escrow contact at the distributor to notice of any problems with receipt of purchaser's funds: | _____ |
|---|---|

| If escrow does not receive adequate response from the above person(s), and the sale is in jeopardy of not closing on time, what additional person at the distributor should escrow notice? | _____ |
|---|---|

| Who should escrow send the Approval to Close Escrow e-mail notice to at the distributor? This person must be responsible for knowing if a cancellation/rescission notice has been received at the distributor or the sales office/persons.  The reply to this e-mail authorizes closing and makes the distributor liable for a complete refund of purchaser's total deposit from the distributor's next proceeds if a purchaser provides proof that a valid rescission was given to the distributor or sales office/persons. | _____ |
|---|---|

| Who should escrow send notice to at the distributor of closings and wire amounts? |
|---|
| _____ |

| Who should escrow contact at the distributor to give notice of a rescission/cancellation received by escrow? | _____ |
|---|---|

| Who should escrow contact at the distributor for help with complaints and general questions? | _____ |
|---|---|

| Who should escrow contact at the distributor for URGENT issues? | _____ |
|---|---|

Please complete as to the contact information for each person named above:

| PERSON NAMED: | e-mail: | tele: | fax: |
|---|---|---|---|
| PERSON NAMED: | e-mail: | tele: | fax: |
| PERSON NAMED: | e-mail: | tele: | fax: |
| PERSON NAMED: | e-mail: | tele: | fax: |
| PERSON NAMED: | e-mail: | tele: | fax: |
| PERSON NAMED: | e-mail: | tele: | fax: |
| PERSON NAMED: | e-mail: | tele: | fax: |

Post the security fund on-line for all personnel to view, or e-mail only to distributor monthly:   On-line  /  E-mail
                                                                                                        Circle One

LUXURY VACATION DEALS, LLC:
BY: _____

BY: _____

**CHICAGO TITLE - TRAVEL CLUB ESCROW PROCEDURES:**

An escrow spreadsheet will be posted daily on the internet for Distributor and ACS personnel to review the status of each escrow.  There are tabs at the bottom for **'open' 'closed' 'cancelled' and 'charge back'** transactions.

1. **Entry of sale onto 'open' spreadsheet:**  An escrow is opened when Chicago receives either a) Purchaser's signed Sales Documents; or b) acknowledgement of Purchaser's credit card funds deposited into the escrow account

2. **Determine the type of sale:**  Escrow make an entry for the type of sale for each escrow -  whether it is a Full Membership or an Exit Program - funds paid to ACS are different for each the two types of purchase.

3. **Determine Right of Rescission Expiration Date & Estimated Escrow Close Date**:  Escrow will enter onto the spreadsheet for each sale, the date of expiration of the rescission and the anticipated escrow closing date.  <u>Rescission:</u>    Midnight of 3rd day after signing - not counting day of sale, Sunday or legal holidays  <u>Est. Close Date</u>:  3rd day after expiration of Rescission - see No. 7 below

4. **Review Purchase Documents** for CORRECT signatures of ALL parties, completion of all required information, and verify that INITIALLED  CHANGES:  Escrow will enter "Y" onto the worksheet when the documents are approved.  **Required Docs into Escrow:**      Worksheet - Membership Purchase Agreement - Receipt for Program Materials      Acknowledgement of Benefits and Services (all items must be initialed)      CC Authorization (**including copies back/front of cc and driver's license/passport**)      ANY other sales document signed or given to the purchaser

5. **Sales Documents NOT approved by escrow:**  If escrow has any issues with the documents, escrow will put "NO" in column "G" on the spreadsheet and a reason why in comments for each sale.  Escrow will <u>change the color of the line to highlight that the sale has a problem.</u>  Escrow will also immediately notice the distributor contact by e-mail to have the item corrected.  If escrow does not receive adequate response in 24-48 hrs, escrow will send another e-mail to the distributor contact and to the distributor's 2nd contact person and make note of these notices in the comments section.  <u>If escrow does not have an adequate response by the time the escrow can close</u>, then escrow will notice ACS and the URGENT distributor contact person that escrow cannot close and the reason why.  Once escrow has approved all of the documents, escrow will enter "Y" on the worksheet, and delete the color on the worksheet.

6. **$ Received Into Escrow Trust Account:** When escrow has receipt of purchaser's $ into the escrow trust account, escrow will put "Y" in column "L" 'Payment Clear' on the spreadsheet.

7. **Estimated Close Date:**  Escrow must provide 2 days mail time after expiration of the rescission period to receive a rescission notice put into the mail during the rescission period; escrow will close and disburse funds on the next day PROVIDING escrow has received Distributor's Authorization set forth below).  **Distributor's Written Authorization of No Rescission and Closing:**  On the day of closing and providing escrow has all funds and signed docs required to close, escrow will send an e-mail to the Distributor's contact person requesting written (e-mail) acknowledgement that the Distributor, and anyone representing the Distributor, has NOT received a notice or request to cancel from this purchaser, and request authorization for escrow to close and disburse purchaser's funds. <u>Escrow will send a separate e-mail authorization request for each escrow and will NOT combine approval requests for separate escrows together into one e-mail</u> – this procedure is to alleviate the risk of having the distributor contact overlook one of the multiple entries and approve a sale to close when it should not.

8. **Upon escrow's receipt of Authorization to Close (set forth above)**, escrow will settle and disburse all funds in escrow according to the Sales Documents and Escrow Instructions. Escrow will move the transaction from the 'open' tab to the 'closed' tab for settlement. Distributor's proceeds wire will be sent same day as settlement and will be noted on the spreadsheet. East coast banks usually do not post wires until the next morning. .

9. **Amounts withheld** for the cc fees and security fund will be moved to the "security fund" tab. Initially the cc fees held from each closing will be 2% for V/MC/Disc and 3.25% for AMX; however, on a monthly basis if escrow finds that the withhold % is short of the actual amount of the distributors bank fees, escrow may have to increase the % going forward- escrow will the distributor of any % change.

10. **Distributor may want to receive a wire/check once per week instead of daily** (usually to save the daily $15 escrow bank's wire fees) (distributor's bank may also charge an incoming wire fee) escrow will settle the sales on the respective closing date, and hold disbursement of the proceeds until the weekly wire day.

11. **Escrow will send the distributor an e-mail notice when a wire has been sent** and provide a complete backup for the amounts sent.

12. **Escrow will deduct $15 from the wire amount to pay the escrow bank's wire fee UNLESS distributor chooses to receive one wire weekly – then escrow will waive the $15 fee**.

13. **In the event of a VALID CANCELLATION WITHIN THE RESCISSION TIME PERIOD:** Escrow will immediately notice the distributor and ACS of the cancellation and ask the distributor to notice escrow when distributor has received the KIT returned in good condition. If no KIT received by the distributor by the 10th day, escrow will e-mail and call the purchaser and remind him that escrow cannot refund $ until the KIT has been returned to the distributor IN GOOD CONDITION. If purchaser says he is not going to return the KIT, escrow will confirm that in an e-mail to the purchaser and notice the distributor, and ACS, and refund purchaser's money after withholding the KIT fee and the restocking fee as stated in the Purchase Agreement. Once escrow has disbursed the refund, escrow will move the transaction from the 'open' tab to the 'cancelled' tab. If the KIT is not being returned, then the KIT fee amount that the distributor pays to ACS at each closing must be paid to ACS, and the difference in the KIT fee and the restocking fee are due the distributor and will be disbursed to the distributor with other sale proceeds wire.
In some instances, where a distributor is running skinny on the cc discount fees withheld at closings vs. the actual charge by the merchant bank, escrow may suggest that the distributor allow the refunds of Kit fees and restocking fees to be deposited into the security fund to cover the cc fees shortfall so escrow doesn't have to collect a higher % from closings to cover any shortage.

14. **In the event of a CANCELLATION OUTSIDE OF THE RESCISSION TIME PERIOD** (that was not mailed during the rescission period), **but ESCROW HAS NOT DISBURSED THE DISTRIBUTOR'S PROCEEDS, ESCROW WILL PUT A HOLD on the closing,** and will notice the distributor and ACS that escrow has received a late rescission and wait for further instructions. If instructed to refund, follow same procedures as 13 above. **Escrow manager must approve if distributor elects to close anyway and ignore the rescission received.**

15. **In the event of a CANCELLATION OUTSIDE OF THE RESCISSION TIME PERIOD and ESCROW HAS CLOSED AND DISBURSED FUNDS,** escrow will notice the Purchaser that the rescission notice was transmitted outside of the rescission time period and was received after escrow had already closed the escrow and purchaser's funds were disbursed in accordance with their escrow instructions. Escrow will immediately notice the distributor and ACS.

16. **In the event escrow discovers that the Purchaser gave a VALID RESCISSION NOTICE AFTER ESCROW HAS ALREADY DISBURSED FUNDS TO THE DISTRIBUTOR**, escrow will notice the distributor and ACS <u>and escrow will withhold the full amount of the sale (not just the proceeds) from the distributor's next closings so that escrow can refund the purchaser's total deposit per the purchase agreement.</u> Escrow will follow the refund procedures same as 13 above, EXCEPT, ACS will have already received KIT fee at close so if purchaser is not going to return the KIT, then the full KIT fee amount withheld from refund will be paid to the distributor.

17. **In the event a purchaser wants to REINSTATE a purchase after a rescission notice has been received AND funds have NOT been disbursed from escrow, purchasers (all) must sign a REINSTATEMENT INSTRUCTION** before escrow can proceed to close the sale AND <u>a new 3-day Right of Rescission attaches after the reinstatement is signed.</u> Escrow prefers that escrow e-mail the reinstatement instructions direct to the purchaser to sign.

18. **In the event escrow receives a cc authorization for a credit card of a person that is NOT one of the purchasers,** distributor will need to obtain the card holder's signature on a 3rd Party Receipt before disbursing those funds.

19. <u>HANDLING A CHARGE-BACK BEFORE ESCROW HAS CLOSED:</u> Escrow will be noticed by its merchant bank that a purchaser has disputed the cc charge for purchase of the membership. The bank will remove the disputed amount (usually the total sales price) from escrow's trust account and the bank will put that money into a 'suspense' account at the bank until the dispute is resolved.

   <u>If the charge-back was received by the bank **before expiration of the rescission period**</u>, there is nothing that escrow can do but go ahead and let the bank refund to the purchaser, and escrow will immediately notice the distributor and ACS that the purchaser initiated a charge back before the end of the expiration period and the transaction is cancelled. Move the account from the 'open' tab to the 'cancelled' tab.

   <u>If the charge-back was received by the bank **after expiration of the rescission period**</u>, escrow will immediately **put a HOLD ON THE ESCROW FROM CLOSING**, notice the distributor and ACS, and wait for distributor's instruction as to whether or not distributor wants to challenge the charge back or go ahead and let the bank refund to the purchaser. Depending upon what the distributor decides, escrow will follow the refund procedure in the paragraph above, or respond to the dispute as set forth in 20 below. **BUT IN NO EVENT CAN THIS ESCROW CLOSE UNTIL DISPUTE IS SETTLED AND THE FUNDS RETURNED TO THE ESCROW ACCOUNT BY THE BANK.** <u>Escrow manager must approve if the distributor wants to challenge the charge back as, depending upon the circumstances, escrow may not be able to ever approve closing of the sale, especially if purchaser will arbitrate the bank's decision.</u>

20. **HANDLING A CREDIT CARD CHARGE BACK AFTER ESCROW HAS CLOSED:** Escrow will be noticed by its merchant bank that a purchaser has disputed the cc charge for purchase of the membership.  The bank will remove the disputed amount (usually the total sales price) from escrow's trust account and the bank will put that money into a 'suspense' account at the bank until the dispute is resolved.  Escrow shall immediately 1) withdraw from the distributor's security fund account the amount that the bank withdrew from the escrow trust account and deposit those funds back into the escrow trust account to cover the withdrawal by the bank so that escrow will not have a shortage in its trust account; 2) notice the appropriate distributor contact and ACS that the dispute has been received and funds have been withdrawn from the distributor's security fund account. Escrow will request that the distributor and ACS furnish escrow, within 5 days, any items that either may have to support the sale (escrow will already have copies of the signed sale documents that were deposited into escrow) as distributor and ACS may have others supporting items and/or information – especially from ACS if the purchaser has used the membership as that will make a difference in the outcome of the process.  Escrow will respond to the bank with all of the support that escrow has and receives from distributor/ACS and wait for the bank to make a determination as to approval of the charge back or not.

If the charge back is approved in favor of the distributor by the bank:  The bank will (usually same day or the next) re-deposit the funds that were initially withdrawn from the escrow trust account back into the escrow trust account – escrow shall disburse those funds to the distributor in its next proceeds funding to reimburse distributor for the funds withheld from proceeds to replenish the security fund for the initial withdrawal.

If the charge back is approved In favor of the purchaser by the bank:  The bank will refund the amount held in suspense back to the purchaser's charge account.  Distributor will not receive any funds back.

21. **HANDLING ANY COMPLAINT OR DISPUTE, ATTORNEY OR AG THREAT, ETC. REGARDLESS IF THE PURCHASER INITIATES A CC CHARGE-BACK OR NOT:** If a purchaser makes a complaint or dispute, and threatens, or actually does, get an attorney, goes to the attorney general in the state, goes to the BBB,  etc., to raise their complaint to a higher level.  The purchaser may or may not file a charge back against his credit card when making a complaint. NEVERTHELESS WE TAKE COMPLAINTS VERY SERIOUS and escrow must immediately notice the distributor and ACS of any complaints.  Escrow needs to respond quickly and stay on top of these complaints – if escrow feels that a complaint is escalating, escrow manager may get involved to bring closure to the complaint before it is left to go too far and cost more than a refund or settlement would have.

(8/2011)

# EXHIBIT B

Travel To Go

7964-B Arjons Drive
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/22/2013 | 7268 |

Bill To

Luxury Vacation Deals, LLC (new)
4616 west Sahara #317
Las Vegas, NV 89102

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Fedex Invoice Shipping Charge Tracking | 1 | 169.50 | 169.50 |
| Sheraton Petaluma
Attn: Josh Story
745 Baywood Dr.
Petaluma, CA 94954
210-355-5856 | | | |

| | |
|---|---|
| **Total** | $169.50 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $169.50 |

Travel To Go

7964-B Arjons Drive
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/22/2013 | 7271 |

**Bill To**

Luxury Vacation Deals, LLC (new)
4616 west Sahara #317
Las Vegas, NV 89102

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| 10191765/Salamone | 1 | 150.00 | 150.00 |
| 10191686/Koch | 1 | 150.00 | 150.00 |
| 10191688/Stallmann | 1 | 150.00 | 150.00 |
| 10191693/Del Bonta | 1 | 150.00 | 150.00 |
| 10191700/Petersen | 1 | 150.00 | 150.00 |
| 10191767/Levine | 1 | 150.00 | 150.00 |
| 10191768/Wait | 1 | 150.00 | 150.00 |
| 10191806/Bedoka | 1 | 150.00 | 150.00 |
| 10191807/Banks | 1 | 150.00 | 150.00 |

| | |
|---|---|
| **Total** | $1,350.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $1,350.00 |

Travel To Go

7964-B Arjons Drive
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/7/2013 | 7295 |

| Bill To |
|---------|
| Luxury Vacation Deals, LLC (new)<br>4616 west Sahara #317<br>Las Vegas, NV 89102 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  |  |  |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| 10192092/Picard | 1 | 150.00 | 150.00 |
| 10192090/Walton | 1 | 150.00 | 150.00 |
| 10192087/Jacobsen | 1 | 150.00 | 150.00 |
| 10192086/Stephens | 1 | 150.00 | 150.00 |
| 10191923/Moore | 1 | 150.00 | 150.00 |
| 10191926/Morita | 1 | 150.00 | 150.00 |
| 10191925/Locati | 1 | 150.00 | 150.00 |
| 10191879/Hagerty | 1 | 150.00 | 150.00 |
| 10191878/Oberero | 1 | 150.00 | 150.00 |
| 10191877/Connick | 1 | 150.00 | 150.00 |
| 10192248/Cross | 1 | 150.00 | 150.00 |
| 10192242/Shaw | 1 | 150.00 | 150.00 |
| 10192239/Park | 1 | 150.00 | 150.00 |
| 10192232/Crane | 1 | 150.00 | 150.00 |

| | |
|------|------|
| **Total** | $2,100.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $2,100.00 |

Vacation Fulfillment

10606 Camino Ruiz
Suite 8 #304
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/16/2013 | 7313 |

**Bill To**

Luxury Vacation Deals, LLC (new)
4616 west Sahara #317
Las Vegas, NV 89102

| Terms | Rep | Project |
|-------|-----|---------|
|       |     |         |

| Qty | Item | Description | Rate | Class | Amount |
|-----|------|-------------|------|-------|--------|
| 2 | Shipping Char... | Fedex Invoice Shipping Charge Tracking | 99.19 | | 198.38 |
| | | Hampton Inn & Suites Windsor<br>Attn: Josh Story<br>8937 Brooks Rd South<br>Windsor, CA 95492 | | | |

| | |
|---|---|
| **Total** | $198.38 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $198.38 |

Travel To Go

7964-B Arjons Drive
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/13/2012 | 6793 |

| Bill To |
|---------|
| Luxury Vacation Deals, LLC |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| VIP Passport | 10 | 150.00 | 1,500.00 |
| Inv. 6477 | -2 | 150.00 | -300.00 |

| | |
|---|---|
| **Total** | $1,200.00 |
| **Payments/Credits** | $-600.00 |
| **Balance Due** | $600.00 |

Travel To Go

7964-B Arjons Drive
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/17/2012 | 6916 |

| Bill To |
|---------|
| Luxury Vacation Deals, LLC |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Zippered Binder- VIP Vacation Plan | 24 | 250.00 | 6,000.00 |
| VIP Passport | 10 | 150.00 | 1,500.00 |

| | |
|---|---|
| **Total** | $7,500.00 |
| **Payments/Credits** | $-6,150.00 |
| **Balance Due** | $1,350.00 |

Travel To Go

7964-B Arjons Drive
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/8/2012 | 6917 |

| Bill To |
|---------|
| Luxury Vacation Deals, LLC |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Zippered Binder- VIP Vacation Plan | 24 | 250.00 | 6,000.00 |
| VIP Passport | 12 | 150.00 | 1,800.00 |

| Total | $7,800.00 |
|-------|-----------|
| Payments/Credits | $-4,500.00 |
| Balance Due | $3,300.00 |

Travel To Go

7964-B Arjons Drive
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/9/2012 | 7132 |

| Bill To |
|---------|
| Luxury Vacation Deals, LLC |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       |         |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Zippered Binder- VIP Vacation Plan | 20 | 250.00 | 5,000.00 |

| | |
|---|---|
| **Total** | $5,000.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $5,000.00 |

Travel To Go

7964-B Arjons Drive
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/21/2012 | 7133 |

| Bill To |
|---------|
| Luxury Vacation Deals, LLC |

| P.O. No. | Terms | Project |
|----------|-------|---------|
|  |  |  |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Zippered Binder- VIP Vacation Plan | 14 | 250.00 | 3,500.00 |
| VIP Passport | 6 | 150.00 | 900.00 |

| | |
|---|---|
| **Total** | $4,400.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $4,400.00 |

Travel To Go

7964-B Arjons Drive
San Diego, CA 92126

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/21/2012 | 7134 |

| Bill To |
|---------|
| Luxury Vacation Deals, LLC |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | | |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Zippered Binder- VIP Vacation Plan | 14 | 250.00 | 3,500.00 |
| VIP Passport | 6 | 150.00 | 900.00 |

| | |
|---|---|
| **Total** | $4,400.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $4,400.00 |

# EXHIBIT C

Pearo, Cina

**Subject:** FW: LUXURY VACATION DEALS RESERVE RELEASE
**Attachments:** IRS (1).pdf

**From:** Henry Ingier [mailto:henry.ingier@gmail.com]
**Sent:** Thursday, March 20, 2014 6:57 AM
**To:** Pearo, Cina
**Cc:** laura vadillo; Crane, Lauryl
**Subject:** LUXURY VACATION DEALS RESERVE RELEASE

3-19-2014

Good Afternoon,

Please note the enclosed documents, in which our lawyer and accountants have advised us, take precedent on any reserve funds.

We provided also the General Partnership papers, which show myself as General Partner and responsible party.

The tax that will be owed as well as the debt that is enclosed is more than the reserve itself. Since I, Henry Ingier am personally liable for these debts, it is our request that these funds be released for payment to the IRS and State of California.

We have been advised that chapter 7 or 13 is not an option as the IRS and State of California are exempt.

Please release the reserve account to Laura E Vadillo



Thank You,

Henry Ingier


Laura Vadillo

1

| Form 668 (Y)(c)<br>(Rev. February 2004) | 1872 | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** |
|---|---|---|

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>(800) 829-3903 | Serial Number | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

- This Notice of Federal Tax Lien has been filed as a matter of public record.
- IRS will continue to charge penalty and interest until you satisfy the amount you owe.
- Contact the Area Office Collection Function for information on the amount you must pay before we can release this lien.
- See the back of this page for an explanation of your Administrative Appeal rights.

Name of Taxpayer    HENRY R INGIER

001943

Residence

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | | | 02/11/2013 | 03/13/2023 | 28329.35 |

| Place of Filing | | | | | |
|---|---|---|---|---|---|
| REGISTER OF MESNE CONEYANCE<br>HORRY COUNTY<br>CONWAY, SC 29526 | | | | Total | 28329.35 |

This notice was prepared and signed at _____BALTIMORE, MD_____ , on this,

the __26th__ day of __November_____ , ____2013__ .

| Signature<br><br>for P.A. BELTON | Title<br>ACS SBSE<br>(800) 829-3903 | 23-00-0008 |
|---|---|---|

# EXHIBIT D

# EXHIBIT D

# EXHIBIT D

# EXHIBIT D

## *Windham* P R O F E S S I O N A L S

Date: July 6, 2012

Toll Free: 1-800-229-8620

*Please contact our office to make payment*

**Mailing Address:**
382 Main Street
Salem, NH  03079-2412

**Office Hours:**
8:00 AM to 5:00 PM ET Monday – Thursday
8:00 AM to 4:00 PM ET Friday

| Account Information | |
|---|---|
| Re | Automatic Data Processing |
| Name | Lvd Services |
| Client ID | Rr/MN6-A-800026561048 |
| Account Number | 00254303 |
| Premium Due | $8,614.36 |
| Interest | $0.00 |
| Coll. Costs | $2,153.59 |
| Balance | $10,767.95 |

In view of your failure to make satisfactory arrangements with our client indicated above, they have referred your outstanding account to this office.

Since this obligation is long overdue, we request that payment be made immediately.  Your check for the total amount outstanding should be mailed to the address listed above.

Failing to hear from you, we shall have no alternative but to take the necessary action to protect our client's interests.

When you provide a check as payment, you authorize us either to use information from your check to make a one time electronic funds transfer from your account or to process the payment as a check transaction. If you don't want to authorize an electronic funds transfer, please write "NO EFT" on the line located in the lower left corner of your check.

Send all payments and correspondence to 382 Main Street, Salem, NH 03079.

Payment Options:     Online Payment        HTTPS://WPIPAYMENT.COM
                             Check by Phone        1-800-229-8620
                             Mail in Payment        Windham Professionals, Inc., 382 Main St., Salem, NH 03079

**Minnesota:**         This Collection Agency is licensed by the Minnesota Department of Commerce.
**North Carolina:**    North Carolina Permit Number 101912
**Tennessee:**         This Collection Agency is licensed by the Collection Service Board of the Department of
                             Commerce and Insurance.
**Wisconsin:**          This Collection Agency is licensed by the Division of Banking, P.O. Box 7876, Madison,
                             Wisconsin 53707.

- - - - - - - - - - - - - - - - - - - - - - *Detach and Return with Your Payment* - - - - - - - - - - - - - - - - - C_DAKS1197_L-001



DAKS1197
PO Box 1022
Wixom MI 48393-1022
ADDRESS SERVICE REQUESTED

| REGARDING | |
|---|---|
| Automatic Data Processing | |
| ACCOUNT NUMBER | BALANCE |
| 00254303 | $10,767.95 |

July 6, 2012

00254303-001     823762590

**PERSONAL & CONFIDENTIAL**
Lvd Services
3301 Spring Mountain Rd Ste 11
Las Vegas NV 89102-8648

Windham Professionals, Inc.
382 Main Street
Salem  NH 03079-2412

# EXHIBIT E

# EXHIBIT E

# EXHIBIT E

# EXHIBIT E

EDD   DE 2176
PO BOX 826215 MIC 3A
SACRAMENTO, CA 94230-6215


**EDD** Employment
Development
Department
State of California

| | |
|---|---|
| Letter ID: | L2135488384 |
| Issued Date: | January 28, 2013 |
| Mail Date: | February 4, 2013 |
| Account ID: | 012-7043-8 |
| | 549978112_P3781_E2872 |

LUXURY VACATION DEALS
3301 SPG MNT RD STE 11
LAS VEGAS NV  89102-8648

## Statement of Account

This is a summary of your liability for each period, along with the balance owed on your account. The daily interest for these liabilities has been calculated through February 12, 2013. Payment may be submitted online through our secure Web site or by mail using the attached payment voucher at the bottom of the page.

**Account ID: 012-7043-8 Account Type: Employment Tax**

| Period Ending | Tax | Penalty | Interest | Credit | Balance |
|---|---|---|---|---|---|
| 30-Jun-2012 | $920.81 | $173.74 | $15.59 | $102.10 | $1,008.04 |
| Total: | | | | | $1,008.04 |

If you have any questions regarding this statement, you can review your employer account on the Employment Development Department's e-Services for Business at https://eddservices.edd.ca.gov or call 888-745-3886.

---

DE 2176  Rev. 10 (9-11)      e-Services for Business. Online. Anytime.      https://eddservices.edd.ca.gov

Detach and return this portion with payment

| Account ID | Amount Due |
|---|---|
| 012-7043-8 | $1,008.04 |
| **Letter ID** | **Issue Date** |
| L2135488384 | January 28, 2013 |
| **Statement ID** | |
| 2135488384 | |

Make remittances payable to Employment Development
Department. Include Account ID on all checks and inquiries.


**EDD** Employment
Development
Department
State of California

LUXURY VACATION DEALS
3301 SPG MNT RD STE 11
LAS VEGAS NV  89102-8648

EMPLOYMENT DEVELOPMENT DEPT.
PO BOX 989061
WEST SACRAMENTO, CA 95798-9061

DE 2176  Rev. 10 (9-11)

012704382991231000000100804150002135488384123199916

# EXHIBIT F

# EXHIBIT F

# EXHIBIT F

# EXHIBIT F

 CT Corporation

**Service of Process Transmittal**
10/29/2014
CT Log Number 525978621

**TO:**  Regina Griffis, AVP/Dept Manager
Fidelity National Financial, Inc.
601 Riverside Avenue, Building 5, 4th Floor
Jacksonville, FL 32204

**RE:**  **Process Served in California**

**FOR:**  Chicago Title Company (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Perfekt Marketing, LLC, etc., Pltf. vs. Luxury Vacation Deals, LLC, etc., et al. including Chicago Title Company, Inc., etc., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Motion, Notice(s), Memorandum, Exhibit(s) |
| **COURT/AGENCY:** | Clark County District Court, NV Case # A14703875F |
| **NATURE OF ACTION:** | Plaintiff's Motion for Order Directing Disbursement of Funds or, In The Alternative for an Order to Show Cause to Non-Parties as to Why the Funds Should not be Disbursed |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/29/2014 at 15:50 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | 11/20/2014 at 09:00 a.m. |
| **ATTORNEY(S) / SENDER(S):** | Vernon A. Nelson 6385 S. Rainbow Blvd. suite 600 Las Vagas, NV 89118 702-893-3383 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day Image SOP Email Notification, Regina Griffis regina.griffis@fnf.com Email Notification, Title Claims titleclaims@fnf.com Email Notification, Patrick Mortimer patrick.Mortimer@fnf.com Email Notification, Kelly Feese kelly.feese@fnf.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of  1 / CM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

OCT 2 9 2014   ej:50

Electronically Filed
10/16/2014 05:06:18 PM

CLERK OF THE COURT

1   MOT
    VERNON A. NELSON JR.
2   Nevada Bar No. 6434
    ADAM J. BREEDEN
3   Nevada Bar No. 8768
    LEWIS BRISBOIS BISGAARD & SMITH LLP
4   6385 S. Rainbow Boulevard, Suite 600
    Las Vegas, Nevada 89118
5   Tel: 702.893.3383
    FAX: 702.893.3789
6   E-mail: Vernon.Nelson@lewisbrisbois.com
    E-mail: Adam.Breeden@lewisbrisbois.com
7   *Attorneys for Plaintiff*

8                            DISTRICT COURT

9                      CLARK COUNTY, NEVADA

10  PERFEKT MARKETING, LLC, an Arizona
    limited liability company,
11
12          Plaintiff,
                                              CASE NO. A-14-703875-F
13          vs.
                                              Dept. No.:   XVI
14  LUXURY VACATION DEALS, LLC, a
    Nevada limited liability company; HENRY
15  INGIER, an individual; MICHAEL
    DIMAYO, an individual; JOSHUA STORY,      Date of Hearing:_____
16  an individual,
                                              Time of Hearing:_____
17          Defendants.

18  PLAINTIFF'S MOTION FOR ORDER DIRECTING DISBURSEMENT OF FUNDS OR, IN
19  THE ALTERNATIVE, FOR AN ORDER TO SHOW CAUSE TO NON-PARTIES AS TO
           WHY THE FUNDS SHOULD NOT BE DISBURSED
20
21          Plaintiff, PERFEKT MARKETING, LLC, by and through its attorneys of record,

22  LEWIS BRISBOIS BISGAARD & SMITH LLP, hereby moves this Court for an order

23  distributing funds from a certain account to the Plaintiff or, in the alternative, to issue an

24  Order to Show Cause to non-parties as to why the same should not occur.

25  //

26  //

27  //

28  //

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-9521-7183.1

1    This Motion is supported by the accompanying memorandum of points and

2  authorities, the pleadings and papers on file herein, and any oral argument at any hearing

3  on this Motion.

4    DATED this 16ᵗʰ day of October, 2014.

5                              LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7                       By

8                              VERNON A. NELSON, JR.
                               Nevada Bar No. 6434
9                              ADAM J. BREEDEN
                               Nevada Bar No. 8768
10                             6385 S. Rainbow Boulevard, Suite 600
                               Las Vegas, Nevada 89118
11                             Tel: 702.893.3383
                               FAX: 702.893.3789
12                             E-mail: Vernon.Nelson@lewsbrisbois.com
                               E-Mail: Adam.Breeden@lewisbrisbois.com
13                             *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-9521-7183.1                              2

<u>NOTICE OF MOTION</u>

1

2  TO:   ALL INTERESTED PARTIES; and

3  TO:   THEIR ATTORNEYS OF RECORD.

4        YOU, AND EACH OF YOU, WILL PLEASE TAKE NOTICE that the undersigned

5  will bring the foregoing MOTION FOR ORDER DIRECTING DISBURSEMENT OF

6  FUNDS OR, IN THE ALTERNATIVE, FOR AN ORDER TO SHOW CAUSE TO NON-

7  PARTIES AS TO WHY THE FUNDS SHOULD NOT BE DISBURSED in the above

8  entitled matter on for hearing on the 20 day of NOVEMBER 2014, at the hour of 9:00A

9  before the District Court, Department XVI or as soon thereafter as counsel can be heard.

10       DATED this 16<u>th</u> day of October, 2014.

11                                LEWIS BRISBOIS BISGAARD & SMITH LLP

12

13                       By _____

14                                VERNON A. NELSON JR.
                                 Nevada Bar No. 6434
15                               ADAM J. BREEDEN
                                 Nevada Bar No. 8768
16                               6385 S. Rainbow Boulevard, Suite 600
                                 Las Vegas, Nevada 89118
17                               Tel: 702.893.3383
                                 FAX: 702.893.3789
18                               E-mail: Vernon.Nelson@lewisbrisbois.com
                                 E-Mail: Adam.Breeden@lewisbrisbois.com
19                               *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-9521-7183.1                          3

MEMORANDUM OF POINTS AND AUTHORITIES

I.    FACTS

Plaintiff PERFEKT MARKETING, LLC is an Arizona company that among other services provides leads or qualified potential buyers for vacation club memberships to other sales companies.  The Defendants in this case are LUXURY VACATIONS DEALS, LLC and its principals.  LUXURY VACATION DEALS was formerly a company that sold vacation club memberships and agreed to pay PERFEKT MARKETING, LLC money per qualified lead they provided.

PERFEKT MARKETING was not fully paid for the services it provided and it obtained a judgment in the state of Arizona against the Defendants for the unpaid amount which, with principal, interest, costs and attorney's fees, totaled $93,502.14.  The Arizona judgment was entered on August 26, 2014 and the judgment was domesticated in Nevada on September 25, 2014.[1]  To date, no portion of the judgment has been paid.

The Motion concerns a certain merchant reserve account that LUXURY VACATION DEALS formed.  To explain why the reserve account exists, when LUXURY VACATION DEALS sold vacation club memberships, it was acting as a dealer or sales broker for a larger company, Vacations to Go.  Vacations to Go insists on a reserve account so that if customers cancel their memberships or stop charges, a fund exists to reimburse Vacations to Go for the commissions or other funds it has paid for those sales (which were then cancelled or charged back).  The reserve account was set up at Chicago Tile Company, Inc., a California corporation.  On information and belief there is presently $60,120.25 in the reserve account.

On or about February 21, 2013, LUXURY VACATION DEALS entered into an "Irrevocable Assignment of Proceeds in Security Fund Account" wherein is completely and irrevocably assigned the entire reserve account at Chicago Title to PERFEKT

---

[1] Foreign judgment domestication package, Ex. 1.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1 | MARKETING.[2]  Of course, LUXURY VACATION DEALS can only assign what it has a

2 | legal interest in and the assignment may be subject to any valid claims from charge backs

3 | or cancellations made by Vacations to Go on the account.  PERFEKT MARKETING does

4 | not concede that any such valid claims exist, but they may.

5 | Although PERFEKT MARKETING'S entitlement to the reserve account funds

6 | seems clear, it has simply not been able to obtain a release of the funds.  It cannot get

7 | Vacations to Go to assert their claims, it cannot get anyone from LUXURY VACATION

8 | DEALS to sign off on a disbursement, another creditor Steve Yarmak has appeared

9 | making claims and Chicago Title Company is caught in the middle of all these claims,

10 | simply not knowing to whom it can legally release the money.

11 | It should also be noted that on or about October 15, 2014, PERFEKT MARKETING

12 | submitted a writ of garnishment to Chicago Title for the funds, so there can be no

13 | argument that claims of another creditor have somehow taken precedent.[3]

14 | Therefore, PERFEKT MARKETING brings this motion to get the Court to order the

15 | funds to be distributed or to issue an order to show cause on the non-parties as to why

16 | the same should not be ordered.

17 | II.    LAW AND ARGUMENT.

18 | PERFEKT MARKETING is entitled to the funds in the reserve account for two

19 | reasons.  First, all the funds in the account were irrevocably assigned to it on February

20 | 23, 2013.  Second, a writ of execution and garnishment has issued pursuant to the

21 | judgment, directing the funds in the reserve account to be turned over to PERFEKT

22 | MARKETING.

23 | Respectfully, there may be other claims floating around out there but anyone can

24 | make a claim.  PERFEKT MARKETING has established its legal entitlement to the funds

25 |

26 | [2] See Irrevocable Assignment, Ex. 2.  This is a poor quality original so a clearer, unsigned

27 | copy is also attached.

[3] Writ and garnishment package, Ex. 3.

28 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-9521-7183.1

5

1   in the reserve account and should not have to wait any longer for them to be released.

2       Therefore, PERFEKT MARKETING requests an Order directing Chicago Title Co.,

3   Inc. to release the entire account to PERFEKT MARKETING.  Alternatively, if any of the

4   other potential claimants claim a legally-valid portion of the funds that take priority over

5   PERFEKT MARKETING'S interest, let the Court issue an order to show cause for them to

6   support the same.

7   III.    <u>CONCLUSION</u>

8       PERFEKT MARKETING seeks intervention from the Court to adjudicate its

9   entitlement to the reserve account that was assigned to it so that Chicago Title Co., Inc.

10  can distribute the funds.  PERFEKT MARKETING is entitled to those funds and the same

11  should be ordered.

12      DATED this _16th_ day of October, 2014.

13                          LEWIS BRISBOIS BISGAARD & SMITH  LLP

14

15                By

16                        VERNON A. NELSON, JR.,
                      Nevada Bar No. 6434

17                        ADAM J. BREEDEN
                      Nevada Bar No. 8768

18                        6385 S. Rainbow Boulevard, Suite 600
                      Las Vegas, Nevada 89118

19                        Tel: 702.893.3383
                      FAX: 702.893.3789

20                        E-mail: Vernon.Nelson@lewisbrisbois.com
                      E-mail: Adam.Breeden@lewisbrisbois.com

21                        *Attorneys for Plaintiff*

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4847-9521-7183.1                6

**EXHIBIT 1**

**EXHIBIT 1**

**EXHIBIT 1**



Electronically Filed
09/25/2014 04:41:28 PM

CLERK OF THE COURT

1  NOTC
   VERNON A. NELSON JR.
2  Nevada Bar No. 6434
   ADAM J. BREEDEN
3  Nevada Bar No. 8768
   LEWIS BRISBOIS BISGAARD & SMITH LLP
4  6385 S. Rainbow Boulevard, Suite 600
   Las Vegas, Nevada 89118
5  Tel: 702.893.3383
   FAX: 702.893.3789
6  E-mail: Vernon.Nelson@lewisbrisbois.com
   E-Mail: Adam.Breeden@lewisbrisbois.com
7  *Attorneys for Plaintiff*

8                    DISTRICT COURT

9              CLARK COUNTY, NEVADA

10 PERFEKT MARKETING, LLC, an Arizona
   limited liability company,
11
            Plaintiff,
12
      vs.                              CASE NO. A-14-706411-F
13                                     Dept. No.:   XXIV
14 RICHARD "RICK" RECANIA an individual,
   EMPOWERED PARTNERS, LLC, a
15 Nevada limited liability company,
16          Defendants.

17    NOTICE OF FILING APPLICATION OF FOREIGN JUDGMENT AND AFFIDAVIT OF

18          COUNSEL IN SUPPORT WITH AFFIDAVIT OF SERVICE

19    PLEASE TAKE NOTICE that on the 23rd day of September, 2014, Judgment

20 Creditor PERFEKT MARKETING, LLC filed a Application of Foreign Judgment (Ex. A)

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4838-1929-1678.1

1 | and on September 23, 2014 an Affidavit of Counsel for Judgment Creditor (Ex. B), a copy

2 | of both of which are attached to domesticate this matter. You are advised that you have

3 | certain rights which must be exercised under NRS Chapter 17.

4 |        DATED this 23ʳᵈ day of September, 2014:

5 |                                        LEWIS BRISBOIS BISGAARD & SMITH

6 |

7 |                                        By: _____

8 |                                        VERNON A. NELSON JR.
   |                                        Nevada Bar No. 6434

9 |                                        ADAM J. BREEDEN
   |                                        Nevada Bar No. 8768

10 |                                       6385 S. Rainbow Boulevard, Suite 600
    |                                       Las Vegas, Nevada 89118

11 |                                       Tel: 702.893.3383
    |                                       FAX: 702.893.3789
    |                                       *Attorneys for Plaintiff*

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4838-1929-1678.1                                2

## AFFIDAVIT OF SERVICE

STATE OF NEVADA     )
                       ) SS
COUNTY OF CLARK     )

Now Comes the Affiant, Amanda Butler, who does hereby state under oath the following:

1) I am Amanda Butler. I am over the age of 18 and not a party in this matter. I make this affidavit on my own personal knowledge.

2) I am an employee of Lewis Brisbois Bisgaard & Smith, LLP, counsel for the Judgment Creditor.

3) Pursuant to NRS § 17.360, on September 23, 2014 I caused a true and correct copy of this Notice along with the Exhibits as stated to the following persons and entities via U.S. Certified Mail, return receipt requested, as well as a copy via ordinary US Mail addressed as follows:

Empowered Partners, LLC
C/O Its Registered Agent
Your Nevada Corporate Solutions
7848 W. Sahara Ave.
Las Veas, NV 89117

Richard Recania
2745 Evening Rock St.
Las Vegas, NV 89135

*Courtesy Copy to:*
David Mize, Esq.
2415 E. Camelback Rd., Suite 700
Phoenix, AZ 85016

Further the affiant Sayeth Naught:

9/25/14
Date

Amanda Butler

Sworn and Subscribed before me
This 25st day of September, 2014:

NOTARY PUBLIC

PEGGY KURILLA
Notary Public, State of Nevada
Appointment No. 03-83150-1
My Appt. Expires June 22, 2015

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4838-1929-1678.1

3

# EXHIBIT A

DISTRICT COURT CIVIL COVER SHEET

A- 14- 7 0 6 4 1 1- F

*Clark* County, Nevada

Case No.
*(Assigned by Clerk's Office)*

XXI V

## I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| PERFEKT MARKETING, LLC | RICHARD "RICK" RECANIA, an individual; |
| | EMPOWERED PARTNERS, LLC, |
| | a Nevada limited liability company; |
| Attorney (name/address/phone): | Attorney (name/address/phone): |
| Vernon A. Nelson, Esq., & Adam J. Breeden, Esq; | Unknown |
| Lewis Brisbois Bisgaard & Smith LLP | |
| 6385 S. Rainbow Blvd, Suite 600 | |
| Las Vegas, NV 89118 | |

## II. Nature of Controversy *(please select the one most applicable filing type below)*

Civil Case Filing Types

| Real Property | | Torts | |
|---|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** | |
| ☐ Unlawful Detainer | ☐ Auto | ☐ Product Liability | |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Intentional Misconduct | |
| **Title to Property** | ☐ Other Negligence | ☐ Employment Tort | |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort | |
| ☐ Other Title to Property | ☒ Medical/Dental | ☐ Other Tort | |
| **Other Real Property** | ☐ Legal | | |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | | |
| ☐ Other Real Property | ☐ Other Malpractice | | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Foreclosure Mediation Case |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Petition to Seal Records |
| ☐ Special Administration | **Contract Case** | ☐ Mental Competency |
| ☐ Set Aside | ☒ Uniform Commercial Code | **Nevada State Agency Appeal** |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Department of Motor Vehicle |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Worker's Compensation |
| **Estate Value** | ☐ Commercial Instrument | ☐ Other Nevada State Agency |
| ☒ Over $200,000 | ☒ Collection of Accounts | **Appeal Other** |
| ☐ Between $100,000 and $200,000 | ☐ Employment Contract | ☐ Appeal from Lower Court |
| ☐ Under $100,000 or Unknown | ☐ Other Contract | ☐ Other Judicial Review/Appeal |
| ☐ Under $2,500 | | |

| Civil Writ | | Other Civil Filing | |
|---|---|---|---|
| **Civil Writ** | | **Other Civil Filing** | |
| ☐ Writ of Habeas Corpus | ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim | |
| ☐ Writ of Mandamus | ☐ Other Civil Writ | ☒ Foreign Judgment | |
| ☐ Writ of Quo Warrant | | ☐ Other Civil Matters | |

*Business Court filings should be filed using the Business Court civil coversheet.*

9/2/14
Date

Signature of initiating party or representative

*See other side for family-related case filings.*

Form PA 201
Rev 3.1

Electronically Filed
09/02/2014 06:05:43 PM

CLERK OF THE COURT

1 │ AFJ
VERNON A. NELSON JR.
2 │ Nevada Bar No. 6434
ADAM J. BREEDEN
3 │ Nevada Bar No. 8768
LEWIS BRISBOIS BISGAARD & SMITH LLP
4 │ 6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
5 │ Tel: 702.893.3383
FAX: 702.893.3789
6 │ E-mail: Vernon.Nelson@lewisbrisbois.com
E-Mail: Adam.Breeden@lewisbrisbois.com
7 │ Attorneys for Plaintiff

8

9 │ DISTRICT COURT

10 │ CLARK COUNTY, NEVADA

11 │ PERFEKT MARKETING, LLC, an Arizona
limited liability company,

12 │ Plaintiff,

13 │ vs.                               CASE NO. A- 1 4- 7 0 6 4 1 1- F

14 │ RICHARD "RICK" RECANIA an individual;   Dept. No.: XXI V
EMPOWERED PARTNERS, LLC, a
15 │ Nevada limited liability company,

16 │ Defendants.

17

18 │                    APPLICATION OF FOREIGN JUDGMENT

19 │     COMES NOW Plaintiff and Judgment Creditor, PERFEKT MARKETING, LLC, by

20 │ and through counsel Vernon A. Nelson, Jr., Esq. of the law firm LEWIS BRISBOIS

21 │ BISGAARD & SMITH, LLP, and hereby files its Foreign Judgment pursuant to NRS

22 │ Chapter 17, specifically NRS § 17.350, and registers an exemplified copy of the

23 │ Judgment, attached hereto as Exhibit "1":

24 │     A "Judgment" from the Superior Court of the State of Arizona in and for

25 │ Maricopa County, signed by the Honorable Judge John Rea and filed on

26 │ August 26, 2014.

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-7351-7568.1

1     I declare under penalty of perjury under the law of the State of Nevada that the

2  foregoing is true and correct.

3     DATED this 2ⁿᵈ day of September, 2014:

4                          LEWIS BRISBOIS BISGAARD & SMITH

By: _____

VERNON A. NELSON, JR.
Nevada Bar No. 6434
ADAM J. BREEDEN
Nevada Bar No. 8768
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
Tel: 702.893.3383
FAX: 702.893.3789
*Attorneys for Plaintiff*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-7881-7506.1                    2

EXHIBIT 1

EXHIBIT 1

EXHIBIT 1

COPY FOR CERTIFICATION

**HOLCOMB LAW FIRM, PC**
1334 E. Chandler Blvd
Suite 5, Box C-32
Phoenix, Arizona 85048-6263
Telephone: (480) 456-5194
K. Alan Holcomb, SBN 018404
alan@holcomb-law.com
*Attorney for Plaintiff*

FILED
MICHAEL K. JEANES, Clerk
By _____
Gilbert Deputy

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| PERFEKT MARKETING, LLC, an Arizona limited liability company, | No. CV2014-000865 |
| Plaintiff, | **JUDGMENT** |
| vs. | |
| RICHARD "RICK" RECANIA, an individual; EMPOWERED PARTNERS, LLC, a Nevada limited liability company, | |
| Defendants. | |

Plaintiff prevailed in this case on its Motion for Summary Judgment; and the Court hereby enters this final Judgment against RICHARD "RICK" RECANIA, an individual; and EMPOWERED PARTNERS, LLC, a Nevada limited liability company, an individual, jointly and severally.

IT IS ORDERED GRANTING JUDGMENT in favor of Plaintiff PERFEKT MARKETING, LLC against RICHARD "RICK" RECANIA, an individual; and EMPOWERED PARTNERS, LLC, a Nevada limited liability company, an individual, jointly and severally, in the following amounts:

1.  Principal on open invoices in the amount of:      $86,590.00;

2.  Prejudgment interest in the amount of:      $ 2,600.64;

3.  Attorney's Fees in the amount of:      $ 3,697.50;

4.  Taxable costs in the amount of:      $614.00;

5.  Interest at the legal rate of 4.25% per annum on all amounts awarded above.

6.  Reasonable attorney's fees and court costs of collection on the Judgment, subject to a determination of reasonableness by the Court.

DONE IN OPEN COURT this 26th day of _August_, 2014.


_____
Honorable John Rea

HOLCOMB LAW FIRM, PC
PMB C-12
1134 S. Cluster Hills Dr. 3
Phoenix, Arizona 85048-0680
(480) 456-8194

2

Exhibit "B"

PreJudgment Interest Calculation

Perfekt Marketing, LLC
v.
Richard "Rick" Recania &
Empowered Partners, LLC
CV2014-000865

Pre-Judgment Interest Summary Calculation Sheet

Principle amount owing:                         $86,590.00

4.25 % annual interest (current legal rate):    $  3,680.01

Daily interest:                                 $     10.08

Date interest began to run:     November 1, 2013 (date of last payment)

Days of interest:  November 1, 2013 to July 11, 2014  = 258 days

258 days x $10.08 per day = $2,600.64 for prejudgment interest

Total Principal and interest due as of July 11, 2014 = $89,190.64

Interest continues to accrue at $10.08 daily


Prepared by K. Alan Holcomb, SBN 018404


K. Alan Holcomb                    Date
Attorney for Plaintiff


The foregoing instrument is a full, true and correct copy of
the original on file in this office.
Attest _____ 20 14
MICHAEL K. JEANES, Clerk of the Superior Court of the
State of Arizona, in and for the County of Maricopa.
by _____ Deputy

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| STATE OF ARIZONA | ) | | |
| | ) ss. | Cause Number: | |
| COUNTY OF MARICOPA | ) | | CV2014-000865   DT |

I, MICHAEL K. JEANES, the duly elected Clerk of the Superior Court of the State of Arizona, in and for the County of Maricopa, having official custody of the Court's records, do hereby certify and attest the foregoing to be a full, true and correct copy of the original:

JUDGMENT                            Filed        08/26/2014

on file and of record in my office, and I have carefully compared the same with the original, all of which I have caused to be authenticated according to the act of Congress (28, US, Sec. 1738) and the Arizona Rules of Evidence.

Clerk of the Superior Court

| STATE OF ARIZONA | ) | |
| | ) ss. | |
| COUNTY OF MARICOPA | ) | |

I, Norman J. Davis, Presiding Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, do hereby certify that said Court is a Court of Record having a Clerk and Seal. That MICHAEL K. JEANES, who signed the foregoing certificate, is the duly elected Clerk of said Superior Court. That said signature is his authorized signature, and that all of his official acts, as such Clerk are entitled to full faith and credit.

And I further certify that said certificate is in due form of law.

IN WITNESS WHEREOF, I have hereunto set my hand in my official capacity as such Judge, and affixed the seal of said court, this date:

08/26/2014

Presiding Judge of the Superior Court

| STATE OF ARIZONA | ) | |
| | ) ss. | |
| COUNTY OF MARICOPA | ) | |

I, MICHAEL K. JEANES, Clerk of the Superior Court of the State of Arizona, in and for the County of Maricopa, do hereby certify that the Honorable Norman J. Davis, whose name is subscribed to this certificate, is one of the Presiding Judges of the Superior Court of Arizona, in and for the County of Maricopa, duly commissioned and qualified, and that the signature of said Judge to said certificate is genuine.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the Seal of said Court this date:

08/26/2014

Clerk of the Superior Court

# EXHIBIT B

Electronically Filed
09/23/2014 02:21:54 PM

CLERK OF THE COURT

1 │ AFFT
  │ VERNON A. NELSON JR.
2 │ Nevada Bar No. 6434
  │ ADAM J. BREEDEN
3 │ Nevada Bar No. 8768
  │ LEWIS BRISBOIS BISGAARD & SMITH LLP
4 │ 6385 S. Rainbow Boulevard, Suite 600
  │ Las Vegas, Nevada 89118
5 │ Tel: 702.893.3383
  │ FAX: 702.893.3789
6 │ E-mail: Vernon.Nelson@lewisbrisbois.com
  │ E-Mail: Adam.Breeden@lewisbrisbois.com
7 │ *Attorneys for Plaintiff*

8 │                        DISTRICT COURT

9 │                   CLARK COUNTY, NEVADA

10 │ PERFEKT MARKETING, LLC, an Arizona
11 │ limited liability company,

12 │          Plaintiff,

13 │    vs.                              CASE NO. A-14-706411-F
                                         Dept. No.:   XXIV
14 │ RICHARD "RICK" RECANIA an Individual;
   │ EMPOWERED PARTNERS, LLC, a
15 │ Nevada limited liability company,

16 │          Defendants.

17 │ _____

   │        AFFIDAVIT OF COUNSEL FOR JUDGMENT CREDITOR
18 │
   │ STATE OF NEVADA        )
19 │                        ) SS
   │ COUNTY OF CLARK        )
20 │
21 │    COMES NOW Adam J. Breeden, Esq., as counsel for Plaintiff and Judgment Creditor,
22 │ PERFEKT MARKETING, LLC, and states as follows:

23 │    1.  The name and last known address of the Judgment Debtors is:

24 │                    Empowered Partners, LLC
                        C/O Its Registered Agent
25 │                    Your Nevada Corporate Solutions
                        7848 W. Sahara Ave.
26 │                    Las Veas, NV 89117

27 │

28 │

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4824-5027-3950.1

1                 Richard Recania
2                 2745 Evening Rock St.
                  Las Vegas, NV 89135
3
                 *Courtesy Copy to:*
4                 David Mize, Esq.
                  2415 E. Camelback Rd., Suite 700
5                 Phoenix, AZ 85016

6  2.  The name and last known address of the Judgment Creditor is:

7                 Perfekt Marketing
                  3015 S 48th St.
8                 Tempe, AZ 85282
                  Ph. 602.414.4502

9  3.  The foreign judgment that is attached to the Application of Foreign Judgment is to

10   my knowledge valid and enforceable.  To my knowledge, it has not been appealed

11   or stayed by any Court.

12  4.  As of September 23, 2014, to my knowledge no amount of the foreign judgment

13   has been satisfied.  The entire judgment along with all recoverable interest, fees

14   and costs remains unsatisfied.

15      I declare under penalty of perjury under the law of the State of Nevada that the

16  foregoing is true and correct.

17      DATED this 23 day of September, 2014.

18                     LEWIS BRISBOIS BISGAARD & SMITH

19

20                   By:
                    ADAM J. BREEDEN
21                 Nevada Bar No. 8768
                  6385 S. Rainbow Boulevard, Suite 600
22                 Las Vegas, Nevada 89118
                  Tel: 702.893.3383
23                 FAX: 702.893.3789
                  *Attorneys for Plaintiff*

24  SUBSCRIBED AND SWORN to before me
25  this 23 day of Sept, 2014.

26
   NOTARY PUBLIC in and for said
27  County and State.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4824-5627-3950.1

2

PEGGY KURILLA
Notary Public, State of Nevada
Appointment No. 03-83150-1
My Appt. Expires June 22, 2016

**EXHIBIT 2**

**EXHIBIT 2**

**EXHIBIT 2**

## IRREVOCABLE ASSIGNMENT OF PROCEEDS IN SECURITY FUND ACCOUNT HELD BY CHICAGO TITLE COMPANY

FOR VALUE RECEIVED, this assignment ("Assignment") is entered into as of the 21st day of February, 2013 (the "Effective Date") LUXURY VACATION DEALS, LLC, a Nevada limited company ("Assignor") does hereby absolutely and irrevocably assign, convey, transfer and set over unto PERFEKT MARKETING, LLC, an Arizona limited liability company, ("Assignee"), all of Assignor's right, title, and interest, whatsoever that may be ("Interest") under, in, and to, the Luxury Vacation Deals, LLC Security Fund ("Security Fund") established and maintained at Chicago Title Company, a California corporation, doing business at 316 W. Mission Ave,, Suite 121, Escondido, CA 92025 ("Chicago") in accordance with that certain Escrow Agreement and Related Escrow Instructions executed between Assignor and Chicago, having an Effective Date of December 5th, 2011 ("Escrow Agreement").

PURSUANT TO THE ESCROW AGREEMENT, 1) the Security Fund was established to secure the performance(s) of Assignor under the Escrow Agreement, of which one such performance, among others, was to maintain sufficient funds in the Security Fund account to offset any potential loss(es) sustained by Chicago by reason of Assignor's use of Chicago's Merchant (Credit Card) Bank Account ("Merchant Account") to process purchaser(s) payments towards purchase of a travel club membership ("Membership") from Assignor; and 2) any balance remaining in the Security Fund  a)  one-year after the date of the last closing of a sale of a Membership by Assignor through Chicago; or  b)  one-year after the date of the last settlement of a charge-back (including any arbitration thereof) against Assignor by a purchaser of a Membership utilizing Chicago's Merchant Account; and  c) after the later of a) or b), Chicago shall determine from charge-back history, and in its sole discretion, the amount of monies from the remaining Security Fund balance, if any, that may be released to Assignor (and hereafter, the Assignee).

AS OF THIS DATE, 1) the Luxury Vacation Security Fund balance is $58,782.15; and 2) there are two pending charge-backs totaling $3,735.60 against the account, that may, or may not, settle in Assignor's favor; these charge-backs and/or any future charge-backs that do not settle in Assignor's favor will be deducted from the Security Fund balance, and 3) the last sale of a Membership by Assignor closed on December 28, 2012.

NOTWITHSTANDING ANYTHING CONTAINED IN THIS DOCUMENT TO THE CONTRARY, 1) the Escrow Agreement shall remain in full force and effect as to the maintenance, use, disposition, and release of the Security Fund monies by Chicago, except that any release of monies from the Security Fund that would have been paid to Assignor shall now be payable to Assignee; and  2) the Assignor shall not be relieved

from any duty, act, performance, responsibility, liability, or other, under the Escrow Agreement by reason of this assignment.

THIS SHALL CONSTITUTE AN IRREVOCABLE ASSIGNMENT by Assignor to Assignee of the Luxury Vacation Deals Security Fund, and Chicago shall take no further instruction or authorization, verbal or written, from the Assignor as to the Luxury Vacation Deals Security Fund after the Effective Date hereof.

ACKNOWLEDGEMENT AND AGREEMENT - ASSIGNEE.  Assignee hereby acknowledges having read and understood all of the terms and conditions of the Escrow Agreement as to the Security Fund and hereby agrees to abide by the terms and conditions thereof as to the use and release of the Security Fund monies.  Nothing in this assignment shall be construed as to give Assignee any more, any less, or any different handling of or Interest in the Luxury Vacation Deals Security Funds than the Assignor had under the Escrow Agreement prior to this assignment.

REPRESENTATIONS AND WARRANTIES - ASSIGNOR.  Assignor warrants and represents as follows:

A.   It has taken all action necessary to authorize the execution and delivery of this Assignment; and

B.   It has made no prior assignment(s) of any of the Assignor's Interest in or to the Security Fund account at Chicago Title; and

C.   The Escrow Agreement as to the Security Fund is in full force and effect on the date hereof and may be subject to defenses, setoffs and/or counterclaims as set forth in the Escrow Agreement; and

D.   All of Assignor's right, title and interest in and to the Security Fund under the Escrow Agreement are fully assignable without the necessity of obtaining any consent or approval from any other party EXCEPT THAT Chicago is required to obtain the signatures of the Assignor and JD&T Enterprises, Inc. to a General Release and Estoppel to Chicago Title Company prior to release of the Luxury Vacation Deals Security Fund balance to the Assignor (hereafter the Assignee).

NO AMENDMENT. From and after the Effective Date hereof, the Escrow Assignment shall not be materially altered, modified, amended, terminated or canceled as to the Security Fund without the prior written consent of Assignee, which consent shall not be unreasonably withheld or delayed.

CONSTRUCTION. When the context so requires, the singular shall include the plural and conversely, and use of any gender shall include all genders.

2

**BINDING EFFECT.** This Assignment and the covenants and Assignments herein shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective successors and assigns.

**GOVERNING LAW.** This Assignment shall be governed by and construed in accordance with the laws of the State of California, regardless of conflict or laws principles. This Assignment has been reached by negotiation between the parties and shall therefore not be construed against the drafter of the document.

**COUNTERPARTS; FACSIMILE SIGNATURES.** This Assignment may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same document. The telecopied, digital, or facsimile signature of a party on any counterpart of this Assignment shall be deemed to be an original signature of that party, shall be binding upon the signer for all purposes, and may be relied upon by all other parties to this Assignment. However, upon written request from any party to any other party who has submitted a telecopied, digital, or facsimile signature, such party will confirm its telecopied, digital, or facsimile signature by providing an original of this Assignment bearing such party's original signature.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK,
SIGNATURES BEGIN ON FOLLOWING PAGE]

3

IN WITNESS WHEREOF, Assignor has caused this Assignment to be duly executed, under seal, as of the 21ˢᵗ day of February, 2013.

**ASSIGNOR:**

LUXURY VACATION DEALS, LLC,
a California limited liability company

By: ~~_____~~
Name: ~~_____~~
Title: ~~_____~~

By: _____
Name: Michael D. Mayo
Title: PERCSIDENT

Address: 4616 West Sahara Ave
#317
Las Vegas, NV 8910
Tele: 210 555 5856 — 775 250 6384
Email: Jsshuveseryc@yahoo.com
ronllC@hotmail.com

**ASSIGNEE ACCEPTED AND APPROVED:**

PERFEKT MARKETING, LLC,
An Arizona limited liability company

By: _____
Name: Tom Ray
Title: Managing Member

BY: _____
Name: Bill C. Palisca
Title: Member

Address: 5015 S. 48ᵗʰ St
Tempe AZ 85282
Tele: 602 4805-3361
Email: Bill@perfektmarketing.com
brautsch@perfektmarketing.com

**ACCEPTED:**

CHICAGO TITLE COMPANY, a California Corporation

By: _____
Name: _____
Its: _____

## IRREVOCABLE ASSIGNMENT OF PROCEEDS IN SECURITY FUND ACCOUNT
## HELD BY CHICAGO TITLE COMPANY

FOR VALUE RECEIVED, this assignment ("Assignment") is entered into as of the ____ day of February ____ 20__ (the "Effective Date"), LUXURY VACATION DEALS, LLC, a Nevada limited liability company ("Assignor") does hereby absolutely and irrevocably assign, transfer, convey and set over unto PERFEKT MARKETING, LLC, an Arizona limited liability company ("Assignee") all of Assignor's right, title and interest whatsoever that it may have ("Interest") in and to the Security Fund held in a Security Fund established and maintained at Chicago Title Company, a California corporation, doing business at ____ in Assignor's name ("Suite 1"), Escondido, CA 92025 ("Chicago") in accordance with that certain Escrow Agreement and Related Escrow Instructions executed between Assignor and Chicago having an Effective Date of December ____ 20__ ("Escrow Agreement").

PURSUANT TO THE ESCROW AGREEMENT ____ the Security Fund was established ____ secure the full performance ____ of Assignor ____ under the Escrow Agreement for which the right performance and in ____ others ____ was to ____ than sufficient funds in the Security Fund account to offset any potential losses sustained by Chicago on behalf of Assignor's use to Chicago's Merchant Credit Card Bank Account ("Merchant Account") to process purchases they make through purchase of a ____ plus membership ("Membership") from Assignor and to any ____ balance remaining in the Security Fund a ____ transfer date, the balance has accordingly ____ as a result of Membership, by Assignor ____ Chicago or ____ of other ____ that are held or are held as a result of a chargeback indicating any arbitration hereof against Assignor by a purchaser ____ of a Membership through Chicago's Merchant Account ____ at ____ of after the date of the time Chicago of a determination from chargeback reason, and this and distribution the amount of monies from the remaining Security Fund or balance of funds relating ____ proceeds to Assignor hereinafter by ____ assigned.

AS OF THIS DATE there is an agreement regarding fund balance of $49,714.00 that ____ there against no pending chargebacks totaling $33,711.00 against the account with the time ____ there may serve as Assignor's ____ these charge-backs and future charge-backs that can be seen as Assignor's ____ will be deducted from the Security Fund balance and is the sale date of ____ Membership sold the purchase December 23, 2009.

NOTWITHSTANDING ANYTHING CONTAINED IN THIS DOCUMENT TO THE CONTRARY 1) the Escrow Agreement shall remain in full force and effect as if the ____ the remaining use disposition of the Release of the Security Fund from itself ____ to Chicago except that any release of funds as from the Security Fund that would have been paid to Assignor shall ____ be payable to Assignee and 2) the Assignor shall ____ not be required

from any duty, act, performance, responsibility, liability or other under the Escrow Agreement by reason of this assignment.

THIS SHALL CONSTITUTE AN IRREVOCABLE ASSIGNMENT by Assignor to Assignee of the Luxury Vacation Deals Security Fund, and Chicago shall take no further instruction or authorization, verbal or written, from the Assignor as to the Luxury Vacation Deals Security Fund after the Effective Date hereof.

ACKNOWLEDGEMENT AND AGREEMENT - ASSIGNEE   Assignee hereby acknowledges having read and understood all of the terms and conditions of the Escrow Agreement as to the Security Fund and hereby agrees to abide by the terms and conditions thereof as to the use and release of the Security Fund monies.   Nothing in this assignment shall be construed as to give Assignee any more, any less, or any different handling of or interest in the Luxury Vacation Deals Security Funds than the Assignor had under the Escrow Agreement prior to this assignment.

REPRESENTATIONS AND WARRANTIES - ASSIGNOR.   Assignor warrants and represents as follows:

    A.   It has taken all action necessary to authorize the execution and delivery of this Assignment, and

    B.   It has made no prior assignment(s) of any of the Assignor's interest in or to the Security Fund account at Chicago Title, and

    C.   The Escrow Agreement as to the Security Fund is in full force and effect on the date hereof and may be subject to defenses, setoffs and/or counterclaims as set forth in the Escrow Agreement, and

    D.   All of Assignor's right, title and interest in and to the Security Fund under the Escrow Agreement are fully assignable without the necessity of obtaining any consent or approval from any other party EXCEPT THAT Chicago is required to obtain the signatures of the Assignor and JD&T Enterprises, Inc. to a General Release and Estoppel to Chicago Title Company prior to release of the Luxury Vacation Deals Security Fund balance to the Assignor (hereafter the Assignee).

NO AMENDMENT   From and after the Effective Date hereof, the Escrow Assignment shall not be materially altered, modified, amended, terminated or canceled as to the Security Fund without the prior written consent of Assignee, which consent shall not be unreasonably withheld or delayed.

CONSTRUCTION. When the context so requires, the singular shall include the plural and conversely, and use of any gender shall include all genders.

5

**BINDING EFFECT** This Assignment and the covenants and Assignments herein, shall be binding upon and shall inure to the benefit of Assignor and Assignee and their respective successors and assigns.

**GOVERNING LAW** This Assignment shall be governed by and construed in accordance with the laws of the State of California, regardless of conflict of laws principles. This Assignment has been reached by negotiation between the parties and shall therefore not be construed against the drafter of the document.

**COUNTERPARTS; FACSIMILE SIGNATURES.** This Assignment may be executed in one or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same document. The telecopied, digital, or facsimile signature of a party on any counterpart of this Assignment shall be deemed to be an original signature of that party shall be binding upon the signer for all purposes and may be relied upon by all other parties to this Assignment. However upon written request from any party to any other party who has submitted a telecopied, digital, or facsimile signature, such party will confirm its telecopied, digital, or facsimile signature by providing an original of this Assignment bearing such party's original signature

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURES BEGIN ON FOLLOWING PAGE]

IN WITNESS WHEREOF, Assignor has caused this Assignment to be duly executed under seal as of the ___ day of February, 2013.

**ASSIGNOR:**

LUXURY VACATION DEALS, LLC,
a California limited liability company



Name: _____
Title: _____



Address: _____
_____
_____
_____

**ASSIGNEE ACCEPTED AND APPROVED:**

PERFECT MARKETING, LLC
an Arizona limited liability company



Name: _____
Title: _____

Address: _____
_____
_____
_____

**ACCEPTED:**

CHICAGO TITLE COMPANY, a California
corporation

**EXHIBIT 3**

**EXHIBIT 3**

**EXHIBIT 3**

| | |
|---|---|
| **EIGHTH JUDICIAL DISTRICT COURT**<br>**Clark County, Nevada**<br><br>*Name and Address of Plaintiff(s)*<br>PERFEKT MARKETING, LLC<br>C/O Adam J. Breeden, Esq.<br>Lewis Brisbois Bisgaard & Smith, LLP<br>6385 S. Rainbow Blvd., Suite 600<br>Las Vegas, NV 89118<br><br>*(Plaintiff's(s) Telephone Number)   (702) 598-9359*<br><br>**VERSUS**<br><br>*Name and Address of Defendant*<br>LUXURY VACATION DEALS, LLC<br>C/O Frank J. Dobrucki, Registered Agent<br>3571 E. Sunset Road<br>Las Vegas, NV 89120<br><br>*(Defendant's(s) Telephone Number)  Unknown* | Case No. __A-14-703875-F__<br><br>Department No. __XVI__<br><br><br>**INSTRUCTIONS TO THE**<br>**CONSTABLE** |

**YOU ARE HEREBY INSTRUCTED TO LEVY ON THE FOLLOWING:**

WAGES: _____

AMOUNT PAID:  $ _____

BANK: _____

AMOUNT PAID:  $ _____

PROPERTY: __Chicago Title Company, Inc., 316 W. Mission Ave., Suite 121, Escondido, CA 92025 (serve via US__

__Certified Mail)__ _____

AMOUNT PAID:  $ _____

EVICTIONS: _____

_____

OTHER: _____

_____

_Adam JB_   # 8768

Signature of Attorney for Plaintiff

_702 - 643 - 4533_

Phone Number

LVJCVL-25 Form  Revised 8/11                    Original-File     Copy-Plaintiff

4813-8623-0815.1

| Vendor No.: 37826 | Las Vegas Township Constable | | | | | Check No.: | 10177 |
|---|---|---|---|---|---|---|---|
| Invoice Date | Invoice No.: Description | | Disb. Code | Voucher No. | Account No./ File No. | | Amount |
| 10/09/14 | LV-02069 Constable Service Fee | | 5 | 1796790 | 35049-2 | | 18.00 |
| | | | | | Total Amount: | | 18.00 |

WARNING - Verify Word Valid by touching, rubbing or breathing on.  Do not cash unless you can verify a color change - Rub Briskly to Verify

LEWIS BRISBOIS BISGAARD & SMITH LLP    San Francisco, CA                    CHECK NO.   10177

ATTORNEYS
LAS VEGAS OFFICE
6385 SOUTH RAINBOW BOULEVARD, SUITE 600
LAS VEGAS, NEVADA 89118
(702) 893-3383
                                                                         11-24/1210

                                              DATE 10/09/2014          $   **************18.00

PAY: Eighteen and 00/100***************************************************************

                                                             Draft void 120 days from issued.
                                                             LEWIS BRISBOIS BISGAARD & SMITH LLP

TO THE  Las Vegas Township Constable
ORDER
OF

⑈0⑈0⑈77⑈

| Vendor No.: 84071 | Chicago Title/Escondido | | | | | Check No.: | 10190 |

| Invoice Date | Invoice No. | Description | Disb. Code | Voucher No. | Account No./ File No. | Amount |
|---|---|---|---|---|---|---|
| 10/14/14 | LV-02088 | Garnishee Fee | S | 1797824 | 35049-2 | 5.00 |

| | | | | | Total Amount | 5.00 |

WARNING - Verify Word Valid by touching, rubbing or breathing on   Do not cash unless you can verify a color change - Rub Briskly to Verify

**LEWIS BRISBOIS BISGAARD & SMITH** LLP   San Francisco, CA   CHECK NO.   10190

ATTORNEYS
LAS VEGAS OFFICE
6385 SOUTH RAINBOW BOULEVARD, SUITE 600
LAS VEGAS, NEVADA 89118
(702) 893-3383

11-24/1210

DATE 10/14/2014   $   ***********5.00

PAY: Five and 00/100

Draft void 120 days from issued
LEWIS BRISBOIS BISGAARD, & SMITH LLP

TO THE   CHICAGO TITLE
ORDER   316 W. Mission Avenue, Inc.
OF   Suite 121
Escondido, CA 92025

⑈010190⑈

EIGHTH JUDICIAL DISTRICT COURT, CLARK COUNTY, NEVADA

PERFEKT MARKETING, LLC

Plaintiff,

vs.

LUXURY VACATION DEALS, LLC, HENRY INGIER, MICHAEL
DIMAYO and JOSHUA STORY,

Defendants.

CASE NO. A-14-703875-F

DEPT. NO.  XVI

WRIT OF GARNISHMENT

(In aid of Execution)

THE STATE OF NEVADA TO:     Chicago Title Company, Inc., Garnishee

TO THE CONSTABLE, LAS VEGAS TOWNSHIP OF CLARK COUNTY, GREETINGS:

You are hereby notified that you are attached as garnishee in the above entitled action and you are commanded not to pay any debt due from yourself to the above named defendant(s) and that you must retain possession and control of all personal property, money, credits, debts, effects and choses in action of said defendant(s) in order that the same may be dealt with according to this order or as otherwise required by law.  Where such property consists of wages, salaries, commissions or bonuses the amount you shall retain shall be in accordance with 15 U.S. Code 1673 and Nevada Revised Statutes 31.295 (also, see back of Writ of Execution).  Plaintiff believes that you have property, money, credits, debts, effects and/or choses in action in your hands and under your custody and control belonging to said Defendant described as:

*Money, funds, deposits or property in accounts, including any merchant reserve account in the name of Luxury
Vacation Deals, LLC and/or Henry Ingier*

YOU ARE REQUIRED within 20 days from the date of service of this Writ of Garnishment to answer the interrogatories set forth herein and to return your answers to the office of the Constable which has issued this Writ of Garnishment.  Your failure to answer the interrogatories an comply with this Writ within the required time period may result in a judgment in the amount due the Plaintiff entered against you plus other penalties as indicated on reverse.

YOU ARE REQUIRED to forward all monies due or owning in your possession or under your control for wages, salaries, commissions bonuses or other reasons belonging to the defendant(s) named in this Writ of Garnishment, subject to the exemptions indicated above, to John Bonaventura, Constable, at the, address below along with your answers to the Interrogatories on the reverse side of this form.

IF YOUR ANSWERS TO the Interrogatories indicate that you are the employer of the defendant(s), this Writ of Garnishment shall be deemed to continue for 120 days or until the amount demanded in the attached Writ of Execution is satisfied.

YOU ARE FURTHER DIRECTED to forward all funds due to the defendant(s) each payday in the future, up to 120 days, less any amount which is exempt and less $3.00 per pay period not to exceed $12.00 per month which you may retain as a fee for compliance.  The $3.00 fee does not apply to the first pay period covered by this Writ.

YOU ARE FURTHER REQUIRED to serve a copy of your answers to the Writ of Garnishment on Plaintiff's attorney, if any, whose address appears below.

Issued at the direction of:

LEWIS BRISBOIS BISGAARD & SMITH, LLP

Adam J. Breedon, Esq.
Nevada Bar # 008768
6385 S. Rainbow Blvd., Suite 600
Las Vegas, NV 89118
Ph. (702) 508-9250
*Attorney for Plaintiff*

CONSTABLE –LAS VEGAS TOWNSHIP

By: _____
Constable/Deputy Constable        Date

Please furnish a statement and Case #
*MAKE CHECK PAYABLE AND MAIL TO:*

John Bonaventura, Constable
302 E. Carson Ave. 5th Floor
Las Vegas, NV 89155

4818-8882-6399.1

## INTERROGATORIES TO BE ANSWERED BY THE GARNISHEE UNDER OATH:

1.   Are you in any manner indebted to the judgment debtor LUXURY VACATION DEALS, LLC or HENRY INGIER, either in property or money, and is the debt now due?  If not, when is the debt due?  State fully all particulars.

ANSWER _____

_____

2.   Are you an employer of the judgment debtor?  If so, state the length of your pay period and the amount each defendant presently earns during a pay period.

ANSWER _____

3.   Did you have in your possession, in your charge or under your control, on the date the WRIT OF GARNISHMENT was served upon you any money, property, effects, goods, chattels, rights, credits or choses in action of the judgment debtor or in which the judgment debtor is interested?  If so, state fully all particulars.

ANSWER _____

_____

4.   Do you know of any debts owing to the judgment debtor, whether due or not due, or any money, property, effects, goods, chattels, rights, credits or choses in action, belonging to the judgment debtor, or in which the judgment debtor is interested, and now in possession or under control of others?  If so, state particulars.

ANSWER _____

_____

5.   State your correct name and address, or the name and address of your attorney upon whom written notice of further proceeding in this action may be served.

ANSWER _____

_____

_____

I, _____ do solemnly swear (or affirm) that the answers to the foregoing interrogatories subscribed by me are true.

SUBSCRIBED AND SWORN to before me this

_____ day of _____, 2014      _____
                                                Garnishee – Affiant

_____          _____
NOTARY PUBLIC                                   Garnishee Company Name

NOTE:  If an employer, without legal justification, refuses to withhold the earnings of a defendant demanded in a WRIT OF GARNISHMENT or knowingly misrepresents the earnings of the judgment debtor, the Court shall order the employer to pay the judgment creditor the amount of arrearages caused by the employer's refusal to withhold or his misrepresentation of the judgment debtor's earnings.  In addition, the Court may order the employer to pay the judgment creditor punitive damages in an amount not to exceed $1,000.00 for each pay period in which the employer has, without legal justification, refused to withhold the judgment debtor's earnings or has misrepresented the earnings.  NRS Chapter 31.

STATE OF _____ )
                                ) ss
COUNTY OF _____ )

The undersigned, under penalties of perjury, states that I received the within WRIT OF GARNISHMENT and WRIT OF EXECUTION on (date) _____ and personally served copies of the same on (date) _____ along with the statutory fee of $5.00 on (name) _____ at _____  County of Clark, State of Nevada.

                                                By: _____
                                                     Constable/Deputy Constable

4818-8882-6399.1

1 | WRIT
VERNON A. NELSON JR.
2 | Nevada Bar No. 6434
ADAM J. BREEDEN
3 | Nevada Bar No. 8768
LEWIS BRISBOIS BISGAARD & SMITH LLP
4 | 6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
5 | Tel: 702.893.3383
FAX: 702.893.3789
6 | E-mail: Vernon.Nelson@lewisbrisbois.com
E-Mail: Adam.Breeden@lewisbrisbois.com
7 | *Attorneys for Plaintiff*

8

DISTRICT COURT

9

CLARK COUNTY, NEVADA

10

11 | PERFEKT MARKETING, LLC, an Arizona
limited liability company,

12 |               Plaintiff,

13 |       vs.                                    CASE NO. A-14-703875-F

Dept. No.:   XVI

14 | LUXURY VACATION DEALS, LLC, a
Nevada limited liability company; HENRY
15 | INGIER, an individual; MICHAEL
DIMAYO, an individual; JOSHUA STORY,
16 | an individual,

17 |               Defendants.

18

19 |                      WRIT OF EXECUTION

20 |                ☐ Earnings   ☒ Property
☐ Earnings, Order of Support

21

22 | THE STATE OF NEVADA TO THE CONSTABLE OF LAS VEGAS TOWNSHIP,
GREETINGS:

23 |        On <u>July 15, 2014</u> a judgment upon which there is due in United States Currency

24 | the following amounts, was entered in this action in favor of <u>PERFEKT MARKETING, LLC</u>

25 | as judgment creditor and against <u>LUXURY VACATION DEALS, LLC and HENRY INGIER</u>

26 | as judgment debtor.  Interest and costs have accrued in the amounts shown.  Any

27 | satisfaction has been credited first against total accrued interest and costs, leaving the

28 | following net balance, which bears interest at 5.25% per annum, $12.64 per day from

RECEIVED

OCT - 2 2014

CLERK OF THE COURT

CLERK OF THE COURT

SEP 2 6 2014

RECEIVED

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-6141-3662.1

1   issuance of this writ to date of levy and to which sum must be added all commissions and

2   costs of executing this writ:

3   JUDGMENT BALANCE                    AMOUNTS TO BE COLLECTED BY LEVY

4

| | | | |
|---|---|---|---|
| Principal | $87,886.52 | NET BALANCE | $88,796.60 |
| Pre-Judgment Interest | $ 0 | Fee this Writ | $ 10.00 |
| Attorney's fees | $ 0 | Garnishment Fee | $ 5.00 |
| Costs | $ 0 | Mileage | $ 18.00 |
| JUDGMENT TOTAL | $87,886.52 | Levy Fee | |
| Accrued Costs | | Advertising | |
| Accrued Interest | $ 910.08 | Storage | |
| Less Satisfaction | $ 0 | Interest from Date of Issuance | |
| NET BALANCE | $88,796.60 | SUB-TOTAL | |
| | | Commission | |
| | | TOTAL LEVY | |

16

17          NOW, THEREFORE, you are commanded to satisfy the judgment from the total

18   amount due out of the following described personal property and if sufficient personal

19   property cannot be found, then out of the following described real property:

20          *Money or property held in a security account or reserve account in the name of*

21   *LUXURY VACATION DEALS, LLC or Henry Ingier held by: Chicago Title Company, Inc.,*

22   *316 W. Mission Ave., Ste. 121, Escondido, CA 92025.*

23                        (See below for Exemptions that may apply)

24                  EXEMPTIONS WHICH APPLY TO THIS LEVY
                 (Check appropriate paragraph and complete as necessary)

25

26   ▣   Property other than wages. The exemption set forth in NRS § 21.090 or in other

27       applicable statutes may apply, consult an attorney.

28   ▢   Earnings. The amount subject to garnishment and this writ shall not exceed for

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-6141-3662.1                                          2

1    any one pay period the lesser of:

2    A. 25% of the disposable earnings due the judgment debtor for the pay period, or

3    B. The difference between the disposable earnings for the period and $100.50 per

4      week for each week of the pay period.

5    ☐    Earnings (Judgment or Order for Support). A judgment was entered for amounts

6      due under a decree or order entered on_____ by _____

7      for support of minor children including _____ for the period from

8      _____ in installments of $_____.

9          ☐    A maximum of 50% of the disposable earnings of such

10            judgment debtor who is supporting a spouse or dependent

11            child other than the dependent named above;

12          ☐    A maximum of 60% of the disposable earnings of such

13            judgment debtor who is not supporting a spouse or dependent

14            child other than the dependent named above;

15          ☐    Plus an additional 5% of the disposable earnings of such

16            judgment debtor if and to the extent that the judgment is for

17            support due for a period of time more than 12 weeks prior to

18            the beginning of the work period of the judgment debtor during

19            which the levy is made upon the disposable earnings.

20 NOTE: "Disposable earnings" are defined as gross earnings less deductions for Federal

21 Income Tax Withholding, Federal Social Security Tax and Withholding for any State,

22 County or City Taxes.

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-6141-3662.1

3

1    You are required to return this Writ from date of issuance not less than 10 days or

2  more than 60 days with the results of your levy endorsed thereon.

3                                                          STEVEN D. GRIERSON
                                                           CLERK OF COURT
4

5                                                    BY

6                                                        Deputy Clerk          Date
                                                         MICHELLE MCCARTHY      OCT - 2 2014
7

8  Submitted by:                                    ☐ Not Satisfied       $_____

9  LEWIS BRISBOIS BISGAARD & SMITH LLP              ☐ Satisfied in Sum of

10                                                      $_____

11 VERNON A. NELSON, JR. ESQ.                       ☐ Costs Retained      $_____
   Nevada Bar No. 6434
12 ADAM J. BREEDEN, ESQ.                            ☐ Commis. Retained
   Nevada Bar No. 8768
13 6385 S. Rainbow Boulevard, Suite 600                 $_____
   Las Vegas, Nevada 89118
14 702.893.3383                                     ☐ Costs Incurred      $_____
   FAX: 702.893.3789
15 E-Mail: Vernon.Nelson@lewisbrisbois.com          ☐ Commis. Incurred
   E-Mail: Adam.Breeden@lewisbrisbois.com
16                                                      $_____
   *Attorneys for Plaintiff*
17

18

19

20 CONSTABLE FOR
   LAS VEGAS TOWNSHIP
21

22 By:_____
      Deputy              Date
23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-6141-3662.1                                    4

DISTRICT COURT

CLARK COUNTY, NEVADA

**NOTICE OF EXECUTION**

YOUR PROPERTY IS BEING ATTACHED OR
YOUR WAGES ARE BEING GARNISHED

A court has determined that you owe money to PERFEKT MARKETING, LLC, the judgment creditor. He has begun the procedure to collect that money by garnishing your wages, bank account and other personal property held by third persons or by taking money or other property in your possession.

Certain benefits and property owned by you may be exempt from execution and may not be taken from you. The following is a partial list of exemptions:

1. Payments received under the Social Security Act including, without limitations retirement and survivor benefits, supplemental security income benefits and disability insurance benefits.

2. Payments for benefits or the return of contributions under the Public Employees' Retirement System.

3. Payments for public assistance granted through the Welfare Division of the Department of Human Resources or a local governmental entity.

4. Proceeds from a policy of life insurance if the annual premium does not exceed $15,000.

5. Payments of benefits under a program of industrial insurance.

6. Payments received as disability, illness or unemployment benefits.

7. Payments received as unemployment compensation.

8. Veteran's benefits.

9. A homestead in a dwelling or a mobile home, not to exceed $350,000, unless:

(a) The judgment is for a medical bill, in which case all of the primary dwelling, including a mobile or manufactured home, may be exempt.

(b) Allodial title has been established and not relinquished for the dwelling or mobile home, in which case all of the dwelling or mobile home and its appurtenances are exempt, including the land on which they are located, unless a valid waiver executed pursuant to NRS 115.010 is applicable to the judgment.

10. A vehicle, if your equity in the vehicle is less than $15,000.

11. Seventy-five percent of the take-home pay for any workweek, unless the weekly take-home pay is less than 50 times the federal minimum wage, in which case the entire amount may be exempt.

12. Money, not to exceed $500,000 in present value, held in:

(a) An individual retirement arrangement which conforms with the applicable limitations and requirements of section 408 or 408A of the Internal Revenue Code, 26 U.S.C. §§ 408 and 408A;

(b) A written simplified employee pension plan which conforms with the applicable limitations and requirements of section 408 of the Internal Revenue Code, 26 U.S.C. §§ 408;

(c) A cash or deferred arrangement that is a qualified plan pursuant to the Internal Revenue Code;

(d) A trust forming part of a stock bonus, pension or profit-sharing plan that is a qualified plan pursuant to sections 401 et seq. of the Internal Revenue Code, 26 U.S.C. §§ 401 et seq.; and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-5141-3662.1

5

(e) A trust forming part of a qualified tuition program pursuant to chapter 353B of NRS, any applicable regulations adopted pursuant to chapter 353B of NRS and section 529 of the Internal Revenue Code, 26 U.S.C. § 529, unless the money is deposited after the entry of a judgment against the purchaser or account owner or the money will not be used by any beneficiary to attend a college or university.

13.  All money and other benefits paid pursuant to the order of a court of competent jurisdiction for the support, education and maintenance of a child, whether collected by the judgment debtor or the State.

14.  All money and other benefits paid pursuant to the order of a court of competent jurisdiction for the support and maintenance of a former spouse, including the amount of any arrearages in the payment of such support and maintenance to which the former spouse may be entitled.

15.  A vehicle for use by you or your dependent which is specially equipped or modified to provide mobility for a person with a permanent disability.

16.  A prosthesis or any equipment prescribed by a physician or dentist for you or your dependent.

17.  Payments, in an amount not to exceed $16,150, received as compensation for personal injury, not including compensation for pain and suffering or actual pecuniary loss, by the judgment debtor or by a person upon whom the judgment debtor is dependent at the time the payment is received.

18.  Payments received as compensation for the wrongful death of a person upon whom the judgment debtor was dependent at the time of the wrongful death, to the extent reasonably necessary for the support of the judgment debtor and any dependent of the judgment debtor.

19.  Payments received as compensation for the loss of future earnings of the judgment debtor or of a person upon whom the judgment debtor is dependent at the time the payment is received, to the extent reasonably necessary for the support of the judgment debtor and any dependent of the judgment debtor.

20.  Payments received as restitution for a criminal act.

→  These exemptions may not apply in certain cases such as a proceeding to enforce a judgment for support of a person or a judgment of foreclosure on a mechanic's lien. You should consult an attorney immediately to assist you in determining whether your property or money is exempt from execution. If you cannot afford an attorney, you may be eligible for assistance through Nevada Legal Services.

## PROCEDURE FOR CLAIMING EXEMPT PROPERTY

If you believe that the money or property taken from you is exempt, you must complete and file with the clerk of the court a notarized affidavit claiming the exemption. A copy of the affidavit must be served upon the sheriff and the judgment creditor within 8 days after the notice of execution is mailed. The property must be returned to you within 5 days after you file the affidavit unless you or the judgment creditor files a motion for a hearing to determine the issue of exemption. If this happens, a hearing will be held to determine whether the property or money is exempt. The motion for the hearing to determine the issue of exemption must be filed within 10 days after the affidavit claiming exemption is filed. The hearing to determine whether the property or money is exempt must be held within 10 days after the motion for the hearing is filed.

IF YOU DO NOT FILE THE AFFIDAVIT WITHIN THE TIME SPECIFIED, YOUR PROPERTY MAY BE SOLD AND THE MONEY GIVEN TO THE JUDGMENT CREDITOR, EVEN IF THE PROPERTY OR MONEY IS EXEMPT.

(Added to NRS by 1989, 1135; A 1991, 811, 1412; 1995, 227, 1071; 1997, 265, 3412; 2003, 1010, 1812)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4834-6141-3662.1

6